132 T.C. No. 5


UNITED STATES TAX COURT


JERRY AND PATRICIA A. DIXON, ET AL.,[1]  Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 9382-83, 15907-84,     Filed March 23, 2009.
            30979-85.


        Ps' cases were three of the Kersting tax shelter
test cases that were included in <u>Dixon v. Commissioner</u>,
T.C. Memo. 1991-614 (Dixon II), vacated and remanded
sub nom. <u>DuFresne v. Commissioner</u>, 26 F.3d 105 (9th
Cir. 1994) (<u>DuFresne</u>), on remand <u>Dixon v. Commissioner</u>,
T.C. Memo. 1999-101 (Dixon III), supplemented by T.C.
Memo. 2000-116 (Dixon IV), revd. and remanded 316 F.3d
1041, 1047 (9th Cir. 2003) (Dixon V), on remand T.C.
Memo. 2006-90 (Dixon VI), supplemented by T.C. Memo.
2006-190 (Dixon VIII) (on appeal Dec. 28, 2006, and
Jan. 3, 2007).  The protracted and multiplied
proceedings in these cases stem from the misconduct of
the Government attorneys in arranging secret
settlements of the Ts' and the Cs' test cases that the

<hr>

        [1]Cases of the following petitioners are consolidated
herewith:  Robert L. DuFresne and Carolyn S. DuFresne, docket
Nos. 15907-84 and 30979-85.

Court of Appeals for the Ninth Circuit held in Dixon V was a fraud on the Tax Court.

In Dixon III we held that the Government attorneys' misconduct did not create a structural defect and was harmless error but that it had caused substantial delay in the resolution of Kersting project cases, and we imposed limited sanctions against R under Rule 123(a), Tax Court Rules of Practice and Procedure. In Dixon IV, supplementing Dixon III, we addressed requests by Ps and other participants in the remand proceedings for attorneys' fees under secs. 7430 and 6673(a)(2), I.R.C. We held that Ps and others were not entitled to fees pursuant to sec. 7430, I.R.C., because they had not prevailed on the merits against the underlying deficiency determinations. We held that they were entitled to fees pursuant to sec. 6673(a)(2), I.R.C., because the Government attorneys had multiplied the proceedings unreasonably and vexatiously and the excess attorneys' fees were caused by the misconduct.

In Dixon V the Court of Appeals held that we had applied the wrong standard in Dixon III and that the misconduct of the Government attorneys in the test case proceedings was a fraud on the Tax Court. The Court of Appeals reversed and remanded our decisions in the remaining test cases, ordering the Tax Court to enter decisions on terms equivalent to those provided in the Ts' secret settlement agreement. In Dixon VI we determined the terms and benefits of the Ts' settlement and their application to the Kersting project participants before the Court.

Early in the Dixon V remand proceedings, R agreed that reasonable attorneys' fees should be awarded to Ps and others participating in those proceedings. R, Ps, and the Court agreed that sec. 6673(a)(2), I.R.C., governed the recovery of attorneys' fees.

HB and JI, attorneys with the law firm of P&H, represented Ps in the Dixon V remand proceedings at no cost to Ps over the amount of costs, expenses, and fees that the Court might require R to pay pursuant to sec. 6673(a)(2), I.R.C. On June 29, 2007, JI filed a motion for attorneys' fees of $X for services provided in the Dixon V remand proceedings, accompanied by the stipulation of R and JI of the reasonableness of the amounts requested. On Nov. 19, 2007, R and JI filed a

supplemental stipulation regarding fees and expenses of $Y for the preparation of the subject motion. R concedes that fees and expenses requested on behalf of P&H are reasonable and were caused by the Government attorneys' misconduct.

R argues that the Court cannot require R to pay the requested fees and expenses because sec. 6673(a)(2), I.R.C., and the law of the case established in Dixon IV require that they be paid or incurred by Ps and they have not been so paid or incurred. R argues further that we should not invoke our inherent power to impose the sanction because we did not do so in Dixon IV, in which we held that sec. 6673(a)(2), I.R.C., was the statutory authority governing the award of attorneys' fees.

1. Held: Reasonable attorneys' fees are "incurred", and may therefore be awarded, under sec. 6673(a)(2), I.R.C., when they reflect efforts by attorneys on behalf of their clients to resist or rectify the unreasonable and vexatious conduct of opposing attorneys.

2. Held, further, under sec. 6673(a)(2), I.R.C., attorneys whose unreasonable and vexatious conduct multiplies the proceedings incur the excess costs, expenses, and attorneys' fees caused by their misconduct.

3. Held, further, although in Dixon IV we limited the sanction we imposed under sec. 6673(a)(2), I.R.C., to the amounts paid by Ps and other participants for attorneys' services and expenses during the multiplied proceeding up to that time, the law of the case doctrine does not require us to limit additional sanctions under sec. 6673(a)(2), I.R.C., to the amounts Ps paid for attorneys' fees and expenses for services in the Dixon V remand proceedings.

4. Held, further, the requested attorneys' fees and expenses were incurred for purposes of sec. 6673(a)(2), I.R.C., because (1) R incurred them either when the Government attorneys commenced their unreasonable and vexatious conduct or, alternatively, when we held in Dixon IV that their conduct was unreasonable and vexatious, (2) Ps were contingently liable for the

fees, and (3) the contingency has been satisfied.

5. <u>Held</u>, <u>further</u>, our reliance on sec. 6673(a)(2), I.R.C., for imposing sanctions in Dixon IV did not foreclose recourse to our inherent power in this proceeding.

6. <u>Held</u>, <u>further</u>, pursuant to sec. 6673(a)(2), I.R.C., and the inherent power of the Court, we may and will require R to pay to P&H the requested attorneys' fees and expenses.

7. <u>Held</u>, <u>further</u>, because R incurred the requested fees and expenses pursuant to sec. 6673(a)(2), I.R.C., and Dixon IV, we will invoke our inherent power to require respondent to pay amounts equal to interest at the applicable rates for underpayments under secs. 6601(a) and 6621(a)(2), I.R.C., on $X from June 29, 2007, the date JI filed the motion for attorneys' fees and expenses, and on $Y from Nov. 19, 2007, the date R and JI filed the supplemental stipulation of facts regarding fees and expenses incurred in preparing the subject motion.

<u>John A. Irvine</u>, for petitioners.

<u>Henry E. O'Neill</u>, for respondent.

CONTENTS

|  |  | Page |
|---|---|---|
| Background | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| Discussion | . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| I. | Sources of Tax Court's Power To Assess Attorneys' Fees . | 22 |
| II. | Authority To Award Fees Under Section 6673(a)(2) . . . . | 23 |
|  | A. Positions of the Parties . . . . . . . . . . . . . | 23 |
|  | B. Preliminary Comment . . . . . . . . . . . . . . . . | 24 |
|  | C. Overview of Prevailing Party Statutes and Sanctioning Statutes . . . . . . . . . . . . . . . | 26 |

- 5 -

D.  Principles of Statutory Construction . . . . . . .  31
E.  Interpretation of "Excess Costs, Expenses, and
    Attorneys' Fees Reasonably Incurred Because of
    Such Conduct" . . . . . . . . . . . . . . . . . . .  32
    1.  Threshold Requirement:  Attorney-Client
        Relationship . . . . . . . . . . . . . . . . .  34
    2.  Definition of "Incurred" . . . . . . . . . . .  35
    3.  History of Section 6673(a)(2) . . . . . . . .  39
    4.  Purpose of Sanctioning Statutes . . . . . . .  41
    5.  Statutory Title and Heading . . . . . . . . .  44
    6.  Relevant Caselaw: When Attorneys' Fees Are
        "incurred because of such conduct" Under
        Section 6673(a)(2) . . . . . . . . . . . . . .  45
    7.  Government Incurs the Excess Costs, Expenses,
        and Attorneys' Fees Attributable to
        Government Attorneys' Misconduct . . . . . . .  52
    8.  Section 7430 and the Equal Access to Justice
        Act  . . . . . . . . . . . . . . . . . . . . .  54
    9.  Law of the Case Doctrine . . . . . . . . . . .  58
F.  Fees "Incurred" in Pro Bono Representation and
    Contingent Fee Arrangements . . . . . . . . . . .  64
    1.  Caselaw Under Prevailing Party Statutes  . . .  65
    2.  Section 7430(c)(3)(B) . . . . . . . . . . . .  76
G.  Respondent Must Pay Attorneys' Fees and Excess
    Expenses Requested on Behalf of Petitioners'
    Attorneys . . . . . . . . . . . . . . . . . . . .  78

III. Inherent Power To Impose Sanctions . . . . . . . . . . .  79

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . .  82

OPINION

BEGHE, Judge:  These cases are part of the Kersting tax shelter litigation that stemmed from the misconduct of respondent's trial counsel in Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II), vacated and remanded sub nom. DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994) (per curiam), on remand Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III), revd. and

remanded 316 F.3d 1041 (9th Cir. 2003) (Dixon V).  This is the first Opinion in our third set of opinions requiring respondent to pay attorneys' fees and expenses incurred by or on behalf of Kersting project taxpayers during the various stages of the litigation.[2]  The current set of opinions pertains to fees and expenses incurred in the proceedings before this Court during the remand from Dixon V (Dixon V remand proceedings), which resulted in Dixon v. Commissioner, T.C. Memo. 2006-90 (Dixon VI), supplemented by T.C. Memo. 2006-190 (Dixon VIII), ascertaining the terms and benefits of the Thompson settlement.

Petitioners' cases were consolidated in the Dixon V remand proceedings with 24 cases of other Kersting project taxpayers for

---

[2]In our first attorneys' fees opinion, Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV) (supplementing Dixon III), we awarded Kersting project taxpayers excess fees and expenses under sec. 6673(a)(2)(B) for services rendered by Attorneys Joe Alfred Izen (Izen), Robert Allen Jones (Jones), and Robert Patrick Sticht (Sticht) during the DuFresne remand.

In the second set of attorneys' fees opinions, Dixon v. Commissioner, T.C. Memo. 2006-97 (Dixon VII), and Young v. Commissioner, T.C. Memo. 2006-189, we responded to the supplemental mandate of the Court of Appeals for the Ninth Circuit to rule on Kersting project taxpayers' requests for appellate attorneys' fees and expenses incurred in the Dixon V appeal.  In Dixon VII we awarded appellate attorneys' fees and expenses under sec. 7430 to Kersting project taxpayers represented in the Dixon V appeal by Attorneys John A. Irvine (Irvine) and Henry G. Binder (Binder) of Porter & Hedges, L.L.P. (Porter & Hedges), and Michael Louis Minns (Minns).  In Young we awarded appellate fees and expenses to Kersting project taxpayers represented in the Dixon V appeal by Attorneys Izen and Jones.

purposes of hearing, briefing, and opinion (the Dixon V taxpayers). Counsel for all Dixon V taxpayers have requested attorneys' fees and expenses for their services in the Dixon V remand proceedings. In this Opinion we consider motions for excess costs and attorneys' fees under section 6673(a)(2)(B)[3] for services of Attorneys John A. Irvine (Irvine) and Henry G. Binder (Binder) of Porter & Hedges, L.L.P. (Porter & Hedges), provided to petitioners, the Dixons and the DuFresnes, in the Dixon V remand proceedings.[4]

Early in the Dixon V remand proceedings, respondent's counsel agreed that, pursuant to section 6673(a)(2), respondent is required to pay attorneys' fees and expenses incurred in the Dixon V remand proceedings. The parties have stipulated that reasonable attorneys' fees and expenses totaling $1,101,575.34 are attributable to services of Porter & Hedges in the Dixon V remand proceedings. Porter & Hedges agreed to represent petitioners in the Dixon V remand proceedings at no cost except for such fees and expenses as might be allowed by the Court. The issue for decision is: when attorneys representing the

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]Subsequent opinions will deal with the pending applications of Attorneys Jones, Minns, and Izen for fees and expenses incurred for their services on behalf of other Dixon V taxpayers in the Dixon V remand proceedings.

Commissioner have committed a fraud on the Tax Court that has multiplied and protracted the proceedings, may the Court, pursuant to section 6673(a)(2)(B) or under the Court's inherent power, require the Commissioner to pay attorneys' fees and expenses for services provided during such proceedings by counsel representing the taxpayer pro bono[5] or, as in these cases, for no fee except for any fees that may be allowed by the Court?

---

[5]Although the phrase "pro bono" stems from the Latin phrase "pro bono publico" ("for the public good"), the definition in the current edition of Black's Law Dictionary 1240-1241 (8th ed. 2004) is wider ranging, encompassing "uncompensated legal services performed esp. for the public good" and, quoting Rhode & Hazard, Professional Responsibility 162 (2002):

> "a wide range of activities, including law reform efforts, participation in bar associations and civic organizations, and individual or group representation. Clients who receive such assistance also span a broad range including: poor people, nonprofit organizations, ideological or political causes, and friends, relatives, or employees of the lawyer."

Sec. 7430(c)(3)(B), titled "Pro bono services", added by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3101(c), 112 Stat. 728, describes the covered fees as "fees [that] are less than the reasonable attorneys' fees because an individual is representing the prevailing party for no fee or for a fee which * * * is no more than a nominal fee."

Background[6]

The Kersting tax shelter litigation arose from respondent's disallowance of interest deductions claimed by participants in various tax shelter programs promoted by Henry F.K. Kersting (Kersting) during the late 1970s through the 1980s. Under the test case procedure, most of the other Kersting program participants who had filed Tax Court petitions (non-test-case taxpayers) entered into "piggyback" agreements in which they agreed that their cases would be resolved in accordance with the Court's opinion in the test cases.[7]

Initially, Kersting hired Attorney Brian J. Seery (Seery) to represent Kersting project participants. After Seery resigned because of a perceived possible conflict of interest, Kersting replaced him with Attorneys Robert J. Chicoine and Darrell D. Hallett, whom he later fired and replaced with Attorney Joe

---

[6]The following background statement is based on the existing record and additional information submitted by the parties in connection with the attorneys' fees requests. The facts in these cases are fully set out in Dixon II, Dixon III, Dixon IV, Dixon VI, Dixon VII, Young v. Commissioner, supra, and Dixon VIII. The parties have stipulated additional facts related to the motion for attorneys' fees, and they are so found. The stipulation of facts and the supplemental stipulation of facts are incorporated herein by this reference. We have not found it necessary to hold an evidentiary hearing. Cf. Rule 232(a)(2).

[7]Upon the final disposition of the test cases, respondent and the relatively few non-test-case taxpayers who did not enter into piggyback agreements will generally be ordered to show cause why those cases should not be decided the same way as the test cases.

Alfred Izen, Jr. (Izen), who represented the taxpayers in the trial of the test cases.  Kersting initially paid the taxpayers' legal fees in the Tax Court litigation.  Later some Kersting program participants began contributing to a legal defense fund created to share the cost of further proceedings (the defense fund or fund).  Eventually, more than 300 non-test-case petitioners made periodic and/or lump-sum contributions to the fund.

Before trial of the test cases in this Court, respondent's trial counsel entered into the then-secret, now notorious, Thompson settlement, which was not disclosed to the Court until after the test cases had been tried and decisions entered in accordance with Dixon II,[8] sustaining virtually all respondent's determinations.

On appeal, the Court of Appeals for the Ninth Circuit vacated this Court's decisions in the test cases and remanded them for an evidentiary hearing to determine the full extent of the Government attorneys' misconduct and whether that misconduct was a structural defect voiding the judgment or should be disregarded as harmless error.  DuFresne v. Commissioner, 26 F.3d at 107 (citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991)).

---

[8]Before the trial of the test cases the Court had rejected the test case taxpayers' arguments, advanced by Chicoine and Hallett, that certain evidence should be suppressed and the burden of proof shifted to respondent.  See Dixon v. Commissioner, 90 T.C. 237 (1988) (Dixon I).

On remand, in response to a direction by the Court of Appeals to consider on the merits all motions of intervention filed by interested parties, we ordered consolidation of the cases of 10 non-test-case taxpayers with the remaining test cases for purposes of the evidentiary hearing. Following that hearing, we held in Dixon III that the misconduct of the Government attorneys in the trial of the test cases did not cause a structural defect in the trial but instead resulted in harmless error. However, we sanctioned respondent in two ways for the Government attorneys' misconduct during the test-case proceedings. First, in Dixon III we held that Kersting project taxpayers who had not had final decisions entered in their cases would be relieved of their liabilities for the interest component of the addition to tax for negligence under former section 6653(a) and for the increased rate of interest provided by former section 6621(c). Second, in Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV), pursuant to section 6673(a)(2)(B), we ordered respondent to pay petitioners' attorneys' fees and expenses incurred by them in the DuFresne remand proceedings in the Tax Court as a result of the Government attorneys' misconduct.[9] We entered orders requiring respondent to pay a

---

[9]In Dixon IV, we rejected the fee requests insofar as they relied on sec. 7430, on the ground that the movants had not substantially prevailed on the merits as required by sec. 7430(c)(4)(A)(i).

portion of attorneys' fees and expenses incurred for services provided by Izen and Attorneys Robert Allen Jones (Jones) and Robert Patrick Sticht (Sticht) to the taxpayers in the DuFresne remand proceedings.[10]  In so doing, sua sponte and relying on our inherent power, we included in the sanction the obligation of respondent to pay interest on the awards at the rates provided by sections 6601(a) and 6621(a)(2) from the dates of our orders fixing the awards.[11]  Respondent did not appeal Dixon IV or those orders.[12]

We entered decisions for respondent in the remaining test cases, which the test-case taxpayers again appealed.  We also certified for interlocutory appeal the cases of non-test-case

---

[10]We substantially reduced the amounts requested in varying amounts because of insufficient substantiation.  Sticht and respondent thereafter entered into a comprehensive agreement and submission regarding the fee and expense claims of Kersting project non-test-case taxpayers represented by Sticht in all phases of the Kersting project proceedings through the Dixon V remand proceedings.  That agreement and submission superseded our awards to his clients in Dixon IV.

[11]We note that Attorney Luis DeCastro's monthly bills for legal fees and expenses to the Thompsons provided for interest on outstanding balances, which were expected to be paid from the Thompsons' refunds generated by the secret settlement.  See Dixon III, Findings of Fact IX. Postrial Developments, A. First Thompson Refund ("Mr. DeCastro advised the Thompsons that, because the Internal Revenue Service would be paying interest, he believed it was fair to add interest to the Thompsons' bill."); see also Exhibit 939-ALZ, at 9-13.

[12]Decisions already entered after the Dixon V remand proceedings on behalf of taxpayers who initially contributed to the defense fund have included fee and expense awards pursuant to our opinion in Dixon IV.

taxpayers who had participated in the evidentiary hearing.  The Court of Appeals accepted the interlocutory appeals of the non-test cases but held them in abeyance pending resolution of the appeals of the test cases.

In January 2001 the defense fund retained Attorney Michael Louis Minns (Minns) to replace Izen in the appeal.  As a result, Minns became counsel of record for the Dixons, DuFresnes, Owenses, and Hongsermeiers.  Izen remained counsel of record for the appeals of the Youngs, the only other remaining test-case taxpayers, and the Adairs, who were non-test-case taxpayers.  The steering committee of the defense fund later became dissatisfied with Minns and asked Porter & Hedges to take over the appeals.

Porter & Hedges entered into an agreement with the defense fund to represent test-case taxpayers through oral argument in the appeal (the retainer agreement).  Although the retainer agreement provided for an up-front retainer and monthly billings, Porter & Hedges received only a small portion of its billed appellate fees from the defense fund.  When Irvine and Binder entered into the retainer agreement with the defense fund on behalf of Porter & Hedges, they did not realize that the steering committee whose members signed the retainer agreement had the backing of less than a majority of the participants in the defense fund, many of whom wished to continue to be represented by Minns or Izen in the appeal.

In accordance with the retainer agreement, Porter & Hedges attorneys Irvine and Binder entered appearances in the Court of Appeals on behalf of the Dixons, DuFresnes, and Owenses. Minns remained counsel of record for the Hongsermeiers. Thus, three sets of counsel pursued the appeals of the test cases: Izen on behalf of the Youngs, Minns on behalf of the Hongsermeiers, and Porter & Hedges on behalf of the Dixons, DuFresnes, and Owenses.

In Dixon V the Court of Appeals reversed Dixon III, holding that the misconduct of the Government attorneys in the trial of the test cases was a fraud on the Tax Court, for which no showing of prejudice is required, and that respondent should be more severely sanctioned. The Court of Appeals remanded the cases and ordered this Court to enter judgment in favor of the test-case taxpayers and non-test-case taxpayers who were before the Court of Appeals (the Dixon V taxpayers) on terms equivalent to those provided in the final Thompson settlement agreement. The Court of Appeals left to our discretion the fashioning of judgments that would put the Kersting project taxpayers in the same position as provided in the Thompson settlement. Dixon V, 316 F.3d at 1047 n.11.

Petitioners and other taxpayer appellants requested the Court of Appeals to award appellate attorneys' fees and expenses incurred in the Dixon V appeal. In a supplemental mandate, the Court of Appeals sent those appellate fee requests to the Tax

Court for a determination of entitlement and, if warranted, amount. We responded to that supplemental mandate in Dixon v. Commissioner, T.C. Memo. 2006-97 (Dixon VII), and Young v. Commissioner, T.C. Memo. 2006-189, and awarded appellate fees and expenses under section 7430. In Young we awarded appellate fees and expenses incurred in the Dixon V appeal to taxpayers represented by Izen and Jones. In Dixon VII we awarded appellate attorneys' fees and expenses incurred in the Dixon V appeal to taxpayers represented by Minns and by Porter & Hedges attorneys Irvine and Binder, including petitioners herein, the Dixons and the DuFresnes. Primarily because of the caps on hourly rates under section 7430, Porter & Hedges recovered only $248,049.27 (attorneys' fees of $230,167.75 plus expenses of $17,881.52) out of its total billings of $514,821.90 (attorneys' fees of $494,514.75 plus expenses of $20,307.15).

The agreement with the defense fund obligated Porter & Hedges to represent petitioners (the Dixons and the DuFresnes) and the Owenses only through oral argument in the Dixon V appeal; it did not extend to the Dixon V remand proceedings in this Court. Binder and Irvine discussed with petitioners the decision of the Court of Appeals in Dixon V and the advisability of Porter & Hedges representing them in the Dixon V remand proceedings.[13]

---

[13]The record does not disclose whether Binder and Irvine had similar discussions with the Owenses. The Owenses were

(continued...)

Binder and Irvine told petitioners that the remand proceedings would be time consuming and expensive. Binder and Irvine told petitioners that Henry O'Neill (O'Neill), respondent's counsel, had agreed that respondent would be obligated to pay the taxpayers reasonable attorneys' fees and expenses in the remand proceedings. Binder and Irvine believed that the Court would require respondent to pay petitioners' reasonable attorneys' fees and expenses incurred in the remand proceedings. Binder and Irvine therefore agreed that Porter & Hedges would look only to respondent for payment of those fees. They assured petitioners that Porter & Hedges would not require petitioners to pay any fees or expenses beyond those awarded by the Court. In a January 28, 2003, telephone conversation, petitioners agreed to have Porter & Hedges represent them in the Dixon V remand proceedings on those terms. Pursuant to that oral agreement, Irvine and Binder entered their appearances in these cases in this Court.

Izen, Minns, Sticht, Jones, and Attorney Declan J. O'Donnell represented the remaining Dixon V taxpayers.

On April 30, 2003, respondent filed a motion requesting a status conference. On May 30, 2003, the parties filed status reports with the Court. Respondent's status report stated: "With respect to attorneys' fees related to Tax Court proceedings

---

[13](...continued)
represented by Izen in the Dixon V remand proceedings.

occurring subsequent to the issuance of the Ninth Circuit's opinion [Dixon V], respondent's position is that reasonable attorneys' fees should be awarded to the petitioners."

Binder sent petitioners engagement letters dated August 27, 2003, memorializing the oral agreement of January 28, 2003. The engagement letters, which were signed by Binder, stated:

> Porter & Hedges, and John Irvine and I individually, believe that because we represented you in the appeal that led to the Appellate Decision [Dixon V], we should continue that representation to its conclusion, even though (I) the Fund has failed to fulfill its agreement to pay our fees under the Letter Agreement and (ii) our engagement with the Fund provides only for representation through oral argument in the Appellate Decision. We are not unmindful that hundreds of non-test-case petitioners will be affected by the Appellate Decision as that decision is effected on remand. For these reasons, John Irvine and I agree to represent you with respect to the remand of the Appellate Decision without compensation from you.
>
> * * * We may request payment of fees and expenses from the government, as provided by law or by determination of a court, for our representation. You agree to provide facts, affidavits, testimony, and other assistance as reasonably necessary to support such requests for fees and expenses.

Extensive discovery, including petitioners' interrogatories and requests for production of documents and motions to compel responses to interrogatories and production of documents, preceded the hearings in the Dixon V remand proceedings. Counsel for the Dixon V taxpayers informally agreed that Porter & Hedges would essentially serve as lead counsel in the discovery process, preparation for the evidentiary hearings, opening statements,

examination of many key witnesses, and all significant research and briefing.  During the Dixon V remand proceedings, the Court held six telephone conferences with respondent's and the Dixon V taxpayers' counsel, two status conferences on the record, in Houston and Los Angeles, and three hearings, in Las Vegas, Los Angeles, and Washington, D.C.  Through Binder, Porter & Hedges took the lead in conducting and presenting the Dixon V taxpayers' case.

On September 3, 2004, the Court and counsel to the Dixon V taxpayers held a telephone conference on the record.  During that conference Minns stated that he was concerned about the pressures on Binder because Porter & Hedges:

> have had apparently little or no fees, and I'm not willing to lose him [Binder].  If there is any way to keep him around, I don't want him to have a burden, so I would like to give my clients some type of good-faith -- I would like to make sure that Mr. Binder is still there at the hearing.

Respondent's counsel said he had no comments.

In one of the recorded telephone conferences with the parties, we expressed the view that section 6673(a)(2) is the applicable section insofar as legal fees for proceedings before this Court are concerned.

During the third evidentiary hearing session in Washington, D.C., we discussed with the parties' counsel the briefing schedule and whether the Dixon V taxpayers would file one brief

or separate briefs.  During that discussion, Jones stated to the Court:

> And I would like to hear from Mr. Binder because he has been a prolific writer over the last year and a half, so I'm sure he has got something to say about that possibility [one brief for all remand petitioners].
>
> Your Honor, before any other opinions are generated, I think we should recognize the Herculean effort that Mr. Binder has produced on behalf of all Petitioners' counsel who have participated to various degrees in this process, but the lead dog in this hunt from the first day that we started again in Houston has been Mr. Binder, who has taken it upon himself to do the lion's share of the work * * *

The Dixon V taxpayers agreed to submit a joint opening brief, for which Binder was to do the bulk of the work.  Binder noted that the brief would take hundreds of hours and referred to an earlier comment by Izen that the opening brief would be a "Herculean effort".

The parties also agreed that attorneys' fees incurred in determining the terms of the Thompson settlement should be awarded under section 6673(a)(2) rather than section 7430.  During the hearing we inquired:  "And I take it, there is no disagreement that, at least, insofar as the work that was done in the proceedings before the Tax Court are concerned, that the legal fees are allowable under Section 6673(a)(2)."  No one challenged or made any attempt to clarify or qualify our understanding of the parties' agreement on attorneys' fees.

On July 7, 2005, Izen filed a brief regarding the scope of the mandate of the Court of Appeals. On July 14, 2005, Binder filed a 189-page joint opening brief on behalf of all Dixon V taxpayers. On July 15, 2005, Jones and Izen submitted a 20-page joint supplemental opening brief.

The Dixon V taxpayers' opening brief was drafted primarily by Porter & Hedges attorneys. In respondent's opening brief respondent stated:

> Although not actually elements of the "Thompson settlement," respondent has also urged the Court * * * to award petitioners reasonable attorneys' fees under section 6673(a)(2) in connection with proceedings before the Tax Court subsequent to the issuance of the Dixon V opinion. Thus, the implementation of the Ninth Circuit's mandate should consist of the following: * * * and an appropriate award of reasonable attorneys' fees for Tax Court proceedings occurring subsequent to the issuance of the Ninth Circuit's Dixon V opinion.

The parties filed their reply briefs between October 3 and 10, 2005.

On May 2, 2006, we issued Dixon VI, determining the terms and benefits of the Thompson settlement. On May 10, 2006, we issued Dixon VII, awarding appellate fees and expense under section 7430 to Kersting project taxpayers represented in the Dixon V appeal by Minns and by Porter & Hedges attorneys Binder and Irvine. On September 6, 2006, we issued Young v. Commissioner, T.C. Memo. 2006-189, awarding appellate fees and expenses to Kersting project taxpayers represented in the Dixon V appeal by Izen and Jones.

On September 7, 2006, we issued Dixon VIII denying a motion for reconsideration of Dixon VI filed by Minns and ordered entry of decisions in the test and non-test cases of the Dixon V taxpayers.[14]

Binder died of cancer on December 15, 2006.

On June 29, 2007, Irvine filed a motion for attorneys' fees and expenses related to services provided to petitioners by Porter & Hedges during the Dixon V remand proceedings (Irvine's application for fees). That motion is the subject of this Opinion. On the same date respondent and Irvine filed their stipulation of facts with regard to Irvine's application for fees, stipulating inter alia that Porter & Hedges' reasonable fees and expenses through April 30, 2007, amount to $1,037,542.58. On July 27, 2007, respondent filed respondent's objection to Irvine's application for fees. On September 4, 2007, Irvine filed his response to respondent's objection to Irvine's application for fees. On October 15, 2007, respondent filed respondent's memorandum in support of respondent's objection to Irvine's application for fees. On November 19, 2007, respondent and Irvine filed a supplemental stipulation of facts, stipulating that Porter & Hedges's reasonable fees and

_____

[14]Such of those test and non-test cases whose taxpayers are represented by Minns, Izen, and Sticht have appealed our determinations in Dixon VI (as supplemented by Dixon VIII) of the terms and benefits of the Thompson settlement.

expenses from May 1 to October 31, 2007, related to their application for fees and expenses on remand, totaled $64,745.26.

The parties have stipulated that the total amount of reasonable attorneys' fees and expenses for services provided to petitioners by Porter & Hedges in the Dixon V remand proceedings, including fees and expenses related to Irvine's application for fees (the Porter & Hedges fees), is $1,101,575.34.

## Discussion

I.    Sources of Tax Court's Power To Assess Attorneys' Fees

The Tax Court has power to assess attorneys' fees against counsel who willfully abuse the judicial process. Harper v. Commissioner, 99 T.C. 533, 543-544 (1992). These powers derive from various sources, including the Internal Revenue Code, the Tax Court Rules of Practice and Procedure, the Federal Rules of Civil Procedure, and the Court's inherent power. See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Harper v. Commissioner, supra at 543-544. When an attorney representing the Commissioner has committed a fraud on the Court, the Court has power to assess attorneys' fees against the Commissioner as a sanction pursuant to section 6673(a)(2)(B) or under the Court's inherent power. See Chambers v. NASCO, Inc., supra; Roadway Express, Inc. v. Piper, supra.

Early in the remand proceedings respondent agreed that reasonable attorneys' fees for services in the Dixon V remand proceedings should be awarded to the Dixon V taxpayers pursuant to section 6673(a)(2).  Because of that concession and our statements on the record that legal fees are allowable under section 6673(a)(2), the parties have focused their arguments on the Court's authority under section 6673(a) to require respondent to pay attorneys' fees for services by Irvine, Binder, and others in Porter & Hedges.  We shall first address statutory authority and then return to inherent power.

## II.  Authority To Award Fees Under Section 6673(a)(2)

If an attorney admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, section 6673(a)(2)(A) authorizes the Court to require the attorney to "pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct".  If the attorney is appearing on behalf of the Commissioner, the Court may require the United States to "pay such excess costs, expenses, and attorneys' fees in the same manner as such an award by a district court."  Sec. 6673(a)(2)(B).

### A.  Positions of the Parties

The parties agree that reasonable attorneys' fees related to the Dixon V remand proceedings should be awarded to the Dixon V

taxpayers pursuant to section 6673(a)(2).  They also agree that the reasonable fees and expenses for services provided to petitioners by Porter & Hedges in the Dixon V remand proceedings, including those related to the fee request, total $1,101,575.34.  However, respondent asserts that section 6673(a)(2) does not authorize the Court to require respondent to pay the fees and expenses of Porter & Hedges because petitioners did not pay and had no obligation to pay them.  Respondent relies on cases deciding taxpayers' entitlement to attorneys' fees under section 7430 providing for awards of litigation costs to prevailing parties.[15]

B.    Preliminary Comment

Before embarking on the required analysis, we will summarily sketch the leading authorities in the Tax Court under section 7430 on which respondent relies.  Frisch v. Commissioner, 87 T.C. 838 (1986), Swanson v. Commissioner, 106 T.C. 76 (1996), and Grigoraci v. Commissioner, 122 T.C. 272 (2004), are cases interpreting and applying section 7430, which, like all or most prevailing party statutes, expressly requires that the award of attorneys' fees and expenses be made and paid to the prevailing

---

[15]Sec. 7430(a) provides that "the prevailing party may be awarded a judgment or a settlement for * * * reasonable litigation costs incurred in connection with * * * [a Tax Court] proceeding".  Litigation costs include "reasonable fees paid or incurred for the services of attorneys".  Sec. 7430(c)(1)(B)(iii).

party.  In denying fee awards, these cases all state that the meaning of "incurred" incorporates the requirement that the prevailing party have already paid or be obligated to pay his attorney the amount of the fee for which the award is sought.  In Frisch this condition could not be satisfied because the prevailing party was acting pro se and there was no attorney-client relationship.  In Swanson a ground for denial of a portion of the requested award was that the taxpayers had no obligation to pay fees to their attorney in excess of an agreed amount. Grigoraci, interpreting "incurred" as in Frisch, Swanson, and other prevailing party cases, denied an individual, essentially acting pro se, an award for late-billed fees of the accounting firm of which he was a member; the Court was persuaded that he had no obligation to pay such fees and that they did not reflect litigation services actually rendered.  Accord Kruse v. Commissioner, T.C. Memo. 1999-157; Thompson v. Commissioner, T.C. Memo. 1996-468.

We amplify our sketch by referring to one of our prior opinions in these proceedings, Young v. Commissioner, T.C. Memo. 2006-189.  There, pursuant to the supplemental mandate of the Court of Appeals for the Ninth Circuit in Dixon V, we awarded appellate attorneys' fees under section 7430 to clients of Izen in excess of amounts they had paid or were obligated to pay him in advance of an award.  In so doing, we relied on Phillips v.

GSA, 924 F.2d 1577 (Fed. Cir. 1991), which held that a contingent fee agreement that can be interpreted or deemed to require the prevailing party awarded fees to pay them over to the attorney satisfies the requirement that fees or expenses be "incurred" by the prevailing party for the purposes of a fee-shifting prevailing party statute.

We conclude our sketch by observing that we need not in this Opinion further consider Swanson v. Commissioner, supra, and Young v. Commissioner, supra, because the parties agree that the statute to be applied in this case is section 6673, a sanctioning statute, not section 7430, a prevailing party statute.[16]

C.    Overview of Prevailing Party Statutes and Sanctioning Statutes

The resolution of this controversy depends on whether, when, and by whom excess costs, expenses, and attorneys' fees are deemed to be "incurred" under section 6673(a)(2).  The question is one of first impression under section 6673(a)(2) and its statutory parent of general application, 28 U.S.C. sec. 1927 (2006) (the sanctioning statutes).  Resolution of the question will require detailed description, analysis, and explanation

---

[16]However, at pt. II.E.8., infra, we conclude that the term "incurred" has a broader reach under sec. 6673(a)(2), a sanctioning statute, then it does under sec. 7430, as interpreted by Swanson v. Commissioner, 106 T.C. 76 (1996); at pt. II.F., infra, we specifically address the subject of fees incurred in pro bono representation and contingent fee arrangements under sec. 7430(c)(3)(B) and other prevailing party statutes.

because section 7430, its statutory parent of general application, 28 U.S.C. sec. 2412 (2006), and many of the scores of other specifically targeted Federal prevailing party statutes also incorporate the term "incurred" in their requirements for an award of fees and expenses to the prevailing party.

We begin the analysis by observing what prevailing party statues and sanctioning statutes have in common. The prevailing party statutes and sanctioning statutes create exceptions to the American rule that parties to litigation are required to bear the burden of their own legal fees and are not obligated to pay the attorneys' fees and expenses of the representation of their opponents. Despite their different emphases--compensation in prevailing party statutes, punishment in sanctioning statutes-- they have a commonality at the inception of the process that eventuates in the creation of the duty to pay attorneys' fees to the opposing party or his counsel. The prevailing party statutes and the sanctioning statutes share a legislative judgment that the party upon whom the liability to pay the attorneys' fees and expenses ultimately must fall has engaged in substandard conduct that justifies a departure from the American rule.

Among the conditions to qualification for an award of litigation costs under section 7430 is the requirement, built into the definition of a "prevailing party" in section 7430(c)(4), that the Government have taken a position that was

unjustified. Under section 6673(a)(2), among the conditions for requiring the United States to pay the taxpayers' attorneys' fees and expenses is that the attorney appearing on behalf of the Commissioner has "multiplied the proceedings * * * unreasonably and vexatiously".

In each case there is substandard conduct on behalf of the Government that creates a liability on the part of the Government which has as its correlative the power in the aggrieved party or his attorney and/or the court to impose a duty or obligation to pay the fees and expenses reasonably incurred in order to or needed to respond appropriately to such conduct.[17] The process so initiated and continued is completed by the court, after audit of the requested attorneys' fees and expenses and a determination that all statutory requirements for and limits on the award have been satisfied, in deciding that the aggrieved party or his attorney has the right to an award of fees and expenses.[18]

We see that the incurring of the fees and expenses is a process that commences with the substandard behavior by one party or its counsel and culminates in an obligation by that party or counsel to pay the fees and expenses reasonably required to respond appropriately to the substandard behavior. The process

---

[17]See Cook, "Hohfeld's Contributions to the Science of Law", 28 Yale L.J. 721, 722-723 (1919) (and works cited at 722).

[18]Id.

commences under the prevailing party statutes when the Government takes the unjustified position and under the sanctioning statutes when the attorney commits unreasonable and vexatious acts that multiply the proceedings.

The differences between the prevailing party statutes and the sanctioning statutes reflect and give effect to the degree or extent of culpability for the substandard behavior that initiates the process that leads to the duty to reimburse or pay the fees and expenses as provided by the statutes. Under section 7430 and other prevailing party statutes, the substandard behavior violates a basic generalized duty of care that Congress has decided Government owes to the citizen; this duty is embodied in the requirement that the Government's civil enforcement activity be substantially justified. Under section 6673(a)(2) and the sanctioning statutes, the substandard behavior violates the attorney's professional duty not only to the opposing party but also to opposing counsel and the court;[19] it directly adversely

---

[19]All attorneys representing clients before this Court are required by Rule 201(a) to conduct themselves "in accordance with the letter and spirit of the Model Rules of Professional Conduct of the American Bar Association" (the Model Rules). An attorney who unreasonably and vexatiously multiplies the proceeding violates the Model Rules and breaches his duty to the opposing parties, their counsel, and the Court to refrain from such conduct. See Model R. Profl. Conduct 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."), 3.5(d) (a lawyer shall not "engage in conduct intended to disrupt a tribunal"), 4.4(a) ("a lawyer shall not use means that have no substantial purpose other than to

(continued...)

affects the opposing party and his counsel, and also the court and the judicial process.  Under the sanctioning statutes the substandard conduct is much more culpable, sinking so low in the case at hand as to amount to a fraud on the court, a level of seriousness requiring that the punishment be certain if it is to have the necessary deterrent effect.

The different degrees of culpability of the substandard conduct addressed by the prevailing party statutes and the sanctioning statutes are reflected in the measures of liability created by the substandard conduct.  Under section 7430, the Government's liability to pay the prevailing party's attorneys' fees, created by taking a position that is not substantially justified, is subject to the cap provided in section 7430(c)(1)(B)--$180 per hour for attorney's services provided in 2008,[20] Rev. Proc. 2008-66, sec. 3.38, 2008-45 I.R.B. 1107,

---

[19](...continued)
embarrass, delay, or burden a third person").

[20]Attorneys who are appointed by a court in criminal cases and paid by the Federal, State, or local government fare far worse than prevailing parties who qualify for reimbursement of attorneys' fees under sec. 7430.  A 2007 survey of the rates of compensation for court-appointed counsel in noncapital felony cases reported hourly rates ranging from $40 per hour to $100 per hour.  The Spangenberg Group, Rates of Compensation Paid to Court-Appointed Counsel in Non-Capital Felony Cases at Trial:  A State-by-State Overview (June 2007). Additionally, some States place a cap on the maximum amount for a case ranging from $445 to $20,000 depending on the crime and/or the sentence for the crime. Id.

1114.[21]  Under section 6673(a)(2), the Government's liability to pay attorneys' fees and expenses created by a Government attorney's misconduct has no such limitation other than the requirement that the fees to be paid have been "reasonably incurred" because of such conduct.  This standard for the more culpable conduct allows payments of attorneys' fees to be made at prevailing market rates, which usually exceed the capped amounts for the less culpable conduct addressed by section 7430.

It now becomes necessary to compare and contrast the purposes and language of section 6673(a)(2) and 28 U.S.C. sec. 1927 with those of section 7430 and the prevailing party statutes that account for the different limitations on the rights to an award under those sections and generally under prevailing party statutes and sanctioning statutes.

D.   Principles of Statutory Construction

In interpreting a statute, we begin with the statutory language and apply the plain meaning of the words in the statute unless we find the meaning to be ambiguous.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989); Allen v.

---

[21]Paradoxically, although sec. 7430 has a compensatory purpose "'to deter abusive actions or overreaching by the [IRS] and to enable taxpayers to vindicate their rights regardless of their economic circumstances'", Cooper v. United States, 60 F.3d 1529, 1530 (11th Cir. 1995) (quoting Weiss v. Commissioner, 88 T.C. 1036, 1041 (1987)), the attorneys' fees awarded to prevailing parties often prove inadequate to fully compensate them for the fees owed or paid to their attorneys at market rates.

Commissioner, 118 T.C. 1, 7 (2002); Woodral v. Commissioner, 112 T.C. 19, 23 (1999). "When a statute appears to be clear on its face, there must be unequivocal evidence of legislative purpose before interpreting the statute so as to override the plain meaning of the words used therein." Fernandez v. Commissioner, 114 T.C. 324, 330 (2000); see also Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. USPS, 546 U.S. 481, 486 (2006); see also King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) ("we * * * follow the cardinal rule that a statute is to be read as a whole * * * since the meaning of statutory language, plain or not, depends on context"). Our initial inquiry is whether the language of section 6673(a)(2) is so plain as to permit only one reasonable interpretation that answers the question. See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).

    E.    <u>Interpretation of "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"</u>

The operative phrase of section 6673(a)(2) to be interpreted is "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct".

The part of the phrase "excess costs, expenses, and attorneys' fees" means only the costs, expenses, and fees associated with the multiplied proceedings and not the total cost of the litigation. See Roadway Express, Inc. v. Piper, 447 U.S. at 756 n.3 (agreeing with the lower court that the same language in 28 U.S.C. sec. 1927 provides only for excess costs and not for the total cost of the appeal); Browning v. Kramer, 931 F.2d 340, 345 (5th Cir. 1991) (the same language in 28 U.S.C. sec. 1927 means "only those fees and costs associated with 'the persistent prosecution of a meritless claim'" (quoting Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866 (5th Cir. 1988))). The part of the phrase "because of such conduct" means as a result of the attorney's unreasonable and vexatious conduct.

Respondent agrees that reasonable attorneys' fees related to the Dixon V remand proceedings should be awarded to Dixon V taxpayers pursuant to section 6673(a)(2), conceding that (1) the Dixon V remand proceedings are multiplied proceedings unrelated to the merits of the test cases, (2) fees associated with the Dixon V remand proceedings resulted from the misconduct of respondent's attorneys in the test-case proceedings, (3) the requested fees and expenses are reasonable and attributable to services provided by Binder and Irvine during the Dixon V remand proceedings. Thus, the requested fees and expenses are excess fees and expenses resulting from the misconduct of the Government

attorneys during the test-case proceedings.  The remaining
question is whether those fees and expenses were "incurred"
because of that misconduct.

We begin by addressing the threshold requirement for
determining whether attorneys' fees are incurred.

### 1. Threshold Requirement:  Attorney-Client Relationship

Attorneys' fees cannot exist, and therefore cannot be
incurred, unless there is an attorney-client relationship.  The
word "attorney" assumes an agency relationship, and an
attorney-client relationship is the predicate for an award of
attorneys' fees.  Kay v. Ehrler, 499 U.S. 432, 436 (1991)
(denying attorneys' fees to a pro se attorney-litigant under the
Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. sec.
1988 (2000), a fee-shifting prevailing party statute designed to
encourage private enforcement of civil rights laws).  Thus, pro
se litigants, even those who are attorneys, generally are not
entitled to an award because there is no attorney-client
relationship.[22]  "An 'attorney' is essentially an agent for

---

[22]The Court of Appeals for the Federal Circuit has held,
invoking Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991), that in
proper circumstances a court may invoke its inherent power to
impose attorneys' fees in favor of a pro se attorney as a
sanction.  Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365,
1377-1378 (Fed. Cir. 2002).  "Failure to do so * * * would place
a pro se litigant at the mercy of an opponent who might engage in
otherwise sanctionable conduct, but not be liable for attorney
fees to a pro se party."  Id.

another.  Without the 'other' there can be no attorney, merely a pro se litigant who happens to earn a living as a lawyer.  At any given time, an individual can be either a pro se litigant or an attorney, but not both."  Frisch v. Commissioner, 87 T.C. at 846 (citing Duncan v. Poythress, 777 F.2d 1508, 1518 (11th Cir. 1985) (Roney, J., dissenting)).

Attorneys Binder and Irvine were independent counsel representing petitioners in the Dixon V remand proceeding.  Therefore the threshold requirement of an attorney-client relationship for an award of attorneys' fees under Kay v. Ehrler, supra, is satisfied.

### 2.   Definition of "Incurred"

We consider dictionary definitions of "incurred" to inform ourselves of the definition that Congress may have intended.  Webster's Third New International Dictionary (1993) defines "incur" as to "become liable or subject to: bring down upon oneself", which is reflective of the definition in Black's Law Dictionary 782 (8th ed. 2004):  "To suffer or bring on oneself (a liability or expense)."  To become subject to is to become "vulnerable to.  Subjected".  Webster's Tenth Edition Merriam Collegiate Dictionary (1997).

The sixth edition of Black's Law Dictionary contained the following more expansive definition of "incur":

Incur.  To have liabilities cast upon one by act or operation of law, as distinguished from contract, where

> the party acts affirmatively. To become liable or
> subject to, to bring down upon oneself, as to incur
> debt, danger, displeasure and penalty, and to become
> through one's own action liable or subject to. Com. v.
> Benoit, 346 Mass. 294, 191 N.E. 2d 749, 751. [Black's
> Law Dictionary 768 (6th ed. 1990); emphasis added.]

The definition in the sixth edition reflects the distinction between bringing a liability upon oneself by contract (i.e., voluntarily agreeing, expressly or impliedly by act, to be liable--obligated by express or implied-in-fact contract) and subjecting oneself to a liability by act or operation of law (i.e., having the liabilities imposed by operation of law without consent as a result of one's own action--implied-in-law contract or quasi-contract).[23]

The meaning of "incur" is not limited to "to contract for" or "to agree to be liable for", as respondent argues. While the concept of incurred costs, expenses, and attorneys' fees might include a contractual obligation, it is a broader concept that includes other obligations not necessarily arising from agreed-upon contractual relationships. The word "incur" has a broad range which can be seen in its synonyms: "sustain, experience, suffer, gain, earn, collect, meet with, provoke, run up, induce,

---

[23]The absence of promise distinguishes a contract implied in law from a true contract in which the parties' mutual promises are express or implied in fact. United States v. P/B STCO 213, 756 F.2d 364, 370 n.7 (5th Cir. 1985) (citing 1 Palmer, The Law of Restitution, sec. 1.2, at 8 (1978); Keener, The Law of Quasi-Contracts 3-25 (1893); and Corbin, "Quasi-Contractual Obligations", 21 Yale L.J. 533, 544-545 (1912)).

arouse, expose yourself to, lay yourself open to, bring upon yourself". Collins Essential Thesaurus (2d ed. 2006).

Respondent asserts that it is the other party who must incur the fees and that the proper definition of "incur" is limited to "to become liable for". Under that interpretation, fees "incurred because of such conduct" would mean fees "for which the other party has become contractually liable because of the attorney's unreasonable and vexatious conduct".

It seems to us, in the context of section 6673, a sanctioning statute, that when an attorney engages in conduct that unreasonably and vexatiously multiplies the proceedings, the attorney subjects himself to and becomes liable for the excess fees and expenses related to the opposing counsel's efforts to resist or rectify the misconduct. If that is so, fees "incurred because of such action" would mean fees "for which the attorney has become liable or to which the attorney has subjected himself through the attorney's own unreasonable and vexatious conduct". See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. at 764 (failure to comply with court order "exposed [attorney]

respondents and their clients to liability under Rule 37(b) for the resulting costs and attorneys' fees").[24]

The attorney who acts unreasonably and vexatiously incurs the fees in the sense that his misconduct creates a power in the opposing parties, their counsel, and the court to impose the obligation on that attorney (or his employer, the United States) to reimburse or pay the opposing party or his counsel the amount of reasonable fees for the counsel's services needed to respond appropriately to the misconduct.

As the opposing attorney renders the appropriate services to respond to the misconduct, the fees are also "incurred" by either (1) the opposing party who is liable to pay his attorney for the additional services and expenses or (2) by the opposing attorney who is providing the services pro bono or on a contingent or fixed fee basis and incurs the fees and expenses if the time and resources they devote to one case are not available for other work.  See Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 365 (7th Cir. 2000) (and cases cited thereat); see also Cent. States,

_____

[24]Our interpretation is not foreclosed by Manion v. Am. Airlines, Inc., 395 F.3d 428, 432-433 (D.C. Cir. 2004) (construing 28 U.S.C. sec. 1927), or Pickholtz v. Rainbow Techs., Inc., 284 F.3d at 1374-1376 (construing Fed. R. Civ. P. 37), which denied sanction awards for attorneys' fees to pro se litigants.  In Pickholtz, the Court of Appeals for the Federal Circuit remanded for a determination whether the sanction could be awarded under the court's inherent power; in Manion, the Court of Appeals for the Federal Circuit held that the award could not be sustained under the court's inherent power where the lower court had relied on 28 U.S.C. sec. 1927 in denying the award.

Se. & Sw. Areas Pension Fund v. Cent. Cartage Co., 76 F.3d 114, 116 (7th Cir. 1996) ("Lawyers who devote their time to one case are unavailable for others, and in deciding whether it is prudent to pursue a given case a firm must decide whether the cost-- including opportunities foregone in some other case, or the price of outside counsel to pursue that other case--is worthwhile."). The liability so incurred matures into an obligation when the court exercises its discretion to make and fix the amount of the award.  The last step in our case is truncated because respondent and Irvine have agreed on the amounts of the reasonable fees and expenses.

Section 6673(a)(2) is not plain or clear regarding who must have incurred the excess costs, expenses, and attorneys' fees. Because the statute does not define the term "incurred" and is silent as to who must incur the fees, we may look to the statute's legislative history to determine congressional intent. See Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987);  Fernandez v. Commissioner, 114 T.C. at 329-330.

### 3.   History of Section 6673(a)(2)

The legislative history of a statute may be helpful in resolving its ambiguities.  See, e.g., Anderson v. Commissioner, 123 T.C. 219, 233 (2004), affd. 137 Fed. Appx. 373 (1st Cir. 2005).  Congress enacted section 6673(a)(2) in the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731, 103 Stat.

2400.  The legislative history provides little guidance except to explain that section 6673(a)(2) "is comparable to the authority already provided to district courts under 28 U.S.C. section 1927."[25]  H. Rept. 101-247, at 1400 (1989).  Section 6673(a)(2) and 28 U.S.C. sec. 1927 (the sanctioning statutes) "serve the same purpose, just in different but similar forums, and should therefore be interpreted similarly."  Johnson v. Commissioner, 289 F.3d 452, 456 (7th Cir. 2002) (citing Harper v. Commissioner, 99 T.C. at 545), affg. 116 T.C. 111 (2001); see also Takaba v. Commissioner, 119 T.C. 285, 296-297 (2002).

Congress enacted the first version of 28 U.S.C. sec. 1927, in the Act of July 22, 1813, ch. 14 sec. 3, 3 Stat. 21, "'to prevent multiplicity of suits or processes, where a single suit or process might suffice'".  Roadway Express, Inc. v. Piper, supra at 759 (quoting 26 Annals of Cong. 29 (1813)).  At the time certain U.S. attorneys who were paid on a piecework basis were filing unnecessary lawsuits to inflate their compensation.  Id. at 759 n.6.  The Act of July 22, 1813, ch. 14 sec. 3,  authorized the Federal court to consolidate cases "of like nature, or

---

[25]Tit. 28 U.S.C. sec. 1927 (2006) provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

relative to the same question" pending before it and to require any person who multiplied the proceedings in any case so as to increase costs unreasonably and vexatiously to pay the excess of costs so incurred.  Roadway Express, Inc. v. Piper, 447 U.S. at 759 (citing H. Doc. 25, 27th Cong., 3d Sess. 21-22 (1842)).

The sparse legislative histories of the sanctioning statutes make the provisions difficult to interpret.  See id.  We will consider the purpose of the sanctioning statutes by "consulting any precedents or authorities that inform the analysis".  Dolan v. USPS, 546 U.S. at 486.

### 4.    Purpose of Sanctioning Statutes

Section 6673(a)(2) and 28 U.S.C. sec. 1927 are "rooted in the same basic goals--protecting the court and the public from litigation which impedes the administration of justice".  Byrne v. Nezhat, 261 F.3d 1075, 1131 n.110 (11th Cir. 2001); see also F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137 n.6 (9th Cir. 2001) (28 U.S.C. sec. 1973 addresses abuses of the judicial process); Conner v. Travis County, 209 F.3d 794, 800 (5th Cir. 2000) ("The purpose of a court's sanctioning power is to enable it to ensure its own proper functioning.").  The purpose of the sanctioning statutes "'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'"  Riddle & Associates, P.C. v. Kelly, 414 F.3d 832, 835

(7th Cir. 2005) (quoting <u>Kapco Manufacturing Co. v. C & O Enters., Inc.</u>, 886 F.2d 1485, 1491 (7th Cir. 1989)) (discussing 28 U.S.C. sec. 1927).

The sanctioning statutes are primarily punitive measures whereby a "court can punish contempt of its authority, including disobedience of its process, by [awarding] costs, expenses, and attorneys' fees against attorneys who multiply proceedings vexatiously".  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 33, 62; see also <u>Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater</u>, 465 F.3d 642, 647 (6th Cir. 2006) (28 U.S.C. sec. 1927 sanctions are penal; the purpose of 28 U.S.C. sec. 1927 is "deterrence and punishment rather than restitution"); <u>Moriarty v. Svec</u>, 429 F.3d 710, 721 (7th Cir. 2005) (a "district court may impose sanctions [under 28 U.S.C. sec. 1927] to punish unreasonable and vexatious litigation"); <u>Lee v. L.B. Sales, Inc.</u>, 177 F.3d 714, 718 (8th Cir. 1999) (28 U.S.C. sec. 1927 is penal); <u>Miera v. Dairyland Ins. Co.</u>, 143 F.3d 1337, 1342 (10th Cir. 1998) (28 U.S.C. sec. 1927 is penal); <u>Peterson v. BMI Refractories</u>, 124 F.3d 1386, 1395 (11th Cir. 1997) (28 U.S.C. sec. 1927 is penal); <u>Stiglich v. Contra Costa County Bd. of Suprs.</u>, 106 F.3d 409 (9th Cir. 1997) (28 U.S.C. sec. 1927 punishes the multiplication of proceedings); <u>Republic of the Philippines v. Westinghouse Elec. Corp.</u>, 43 F.3d 65, 73 (3d Cir. 1994) (28 U.S.C. sec 1927 punishes attorneys who vexatiously multiply proceedings); <u>FDIC v. Conner</u>, 20 F.3d 1376,

1384 (5th Cir. 1994) (28 U.S.C. sec. 1927 is penal); <u>Langton v. Johnston</u>, 928 F.2d 1206, 1226 (1st Cir. 1991) (the court may impose a sanction under 28 U.S.C. sec. 1927 to punish attorney misconduct).

Section 6673(a)(2) was designed to discourage unreasonable and vexatious conduct that multiplies the proceedings. The Tax Court's ability to apply section 6673(a)(2) would be unreasonably limited if the Commissioner could avoid sanctions under section 6673(a)(2) when a taxpayer is represented by pro bono counsel or is otherwise not contractually obligated to pay the excess fees.[26] If attorneys should culpably delay the proceedings and we were to deny sanctions against the attorneys, we would risk compounding the problem and encouraging misconduct the statute is intended to deter. See <u>Guam Socy. of Obstetricians & Gynecologists v. Ada</u>, 100 F.3d 691, 695 (9th Cir. 1996).

An attorney who has agreed to represent a taxpayer at a fixed fee, a reduced fee, or no fee on the basis of the time he reasonably expected would be necessary to challenge the taxpayer's deficiency should not be victimized on account of the

---

[26]For example, sanctions may be imposed under 28 U.S.C. sec. 1927 where fees are contingent on recovery of damages. Even though the unreasonable and vexatious conduct does not increase the damages in the underlying cause of action, the court may require the attorney who multiplies the proceedings unreasonably and vexatiously to pay the plaintiff's counsel for the excess hours spent combating the misconduct. See, e.g., <u>In re Osborne</u>, 375 Bankr. 216 (Bankr. M.D. La. 2007).

culpable misconduct of opposing counsel by being required to spend additional time without compensation in order to respond to that misconduct. Nor should an attorney who enters a case on behalf of the taxpayer for the purpose of responding to such misconduct be denied a reasonable fee for his services merely because he has agreed to represent the taxpayer for no fee except for any fees that may be allowed by the Court. This is especially true in these case when the Court has already held pursuant to section 6673(a)(2) that the Commissioner is required to pay the attorneys' fees for services provided in the multiplied proceedings.

Interpreting fees "incurred because of such conduct" under section 6673(a)(2) as fees "to which the attorney has subjected himself through the attorney's own unreasonable and vexatious conduct" is consistent with the punitive purpose of the sanctioning statutes. It is the bad-acting attorney's own unreasonable and vexatious conduct that exposes him to liability under the statute. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. at 765.

### 5. Statutory Title and Heading

While statutory titles and headings cannot limit the plain meaning of statutory text, they are tools available for interpretive purposes when they shed some light on ambiguous words or phrases. Bhd. of R.R. Trainmen v. B&O R.R. Co., 331

U.S. 519, 528-529 (1947). Section 6673 is titled "Sanctions and Costs Awarded by Courts". The heading for paragraph (2) of section 6673(a) is "Counsel's liability for excess costs". The word "Sanctions" in the title and the words "counsel's liability" in the heading support the interpretation that an attorney brings down upon himself through his unreasonable and vexatious conduct the liability to pay the excess costs, expenses, and fees. Section 6673(a)(2) imposes the liability upon the unreasonably and vexatiously acting attorney as a sanction for his misconduct, and he incurs the excess costs, expenses, and attorneys' fees under section 6673(a)(2).

6. Relevant Caselaw: When Attorneys' Fees Are "incurred because of such conduct" Under Section 6673(a)(2)

Dixon IV was the first opinion in which the Court applied section 6673(a)(2) to misconduct of a Government attorney. We relied upon cases where the Court had imposed sanctions against counsel for a taxpayer. E.g., Harper v. Commissioner, 99 T.C. at 543-552; Matthews v. Commissioner, T.C. Memo. 1995-577, affd. without published opinion 106 F.3d 386 (3d Cir. 1996); Murphy v. Commissioner, T.C. Memo. 1995-76. In Dixon IV, citing Harper v. Commissioner, supra at 549, 551, we held that "attorneys' fees awarded under section 6673(a)(2) are computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate" and "that a reasonable hourly rate is the

hourly fee that attorneys of similar skill in the area would typically be entitled to for the type of work in question."

In Harper v. Commissioner, supra at 545, noting the dearth of judicial authority interpreting and applying section 6673(a)(2), we relied on caselaw under 28 U.S.C. sec. 1927 for guidance on the level of misconduct justifying sanctions and the proper measure of attorneys' fees.  Section 6673(a)(2)(B) directs the Court to sanction the Commissioner for unreasonable and vexatious conduct by a Government attorney "in the same manner as such an award by a district court."

An attorney's actual hourly rate is highly probative of the market rate for his services in the community.  See Natl. Association of Concerned Veterans v. Secy. of Def., 675 F.2d 1319, 1324 (D.C. Cir. 1982).  Government attorneys, however, are salaried employees and do not have a billable rate.  In Harper v. Commissioner, supra at 551 (citing United States v. Kirksey, 639 F. Supp. 634, 637 (S.D.N.Y. 1986) (applying Fed. R. Civ. P. 11)), we held that the reasonable hourly rate properly charged for the time of a Government attorney is the hourly fee that attorneys of similar skill in the area would typically be entitled to for the type of work in question.  With regard to applying the market rate to Government attorneys, the Court of Appeals for the Third Circuit observed:

> At first blush, it seems inappropriate for the services of
> an Assistant United States Attorney to be valued at some

kind of market rate. However, upon reflection, we can perceive no difference between the situation of an Assistant U.S. Attorney and that of a public interest lawyer whose services, the Supreme Court has held, are to be valued at a market rate, even though he or she, like Assistant U.S. Attorneys, had no regular billing rate. See Blum v. Stenson, 465 U.S. 886, 895 * * * (1984). [Napier v. Thirty or More Unidentified Fed. Agents, 855 F.2d 1080, 1092-1093 (3d Cir. 1988) (applying Fed. R. Civ. P. 11).]

This Court has found hourly rates ranging from $125 to $200 to be reasonable hourly rates to charge for the services of a Government attorney. See, e.g., Takaba v. Commissioner, 119 T.C. at 304-305 ($150 and $200); Nis Family Trust v. Commissioner, 115 T.C. 523, 552-553 (2000) ($125 and $200); Harper v. Commissioner, supra at 551 ($100); Gillespie v. Commissioner, T.C. Memo. 2007-202 ($150, $125, and $200), affd. 292 Fed. Appx. 517 (7th Cir. 2008); Krol v. Commissioner, T.C. Memo. 2008-242 ($150); Edwards v. Commissioner, T.C. Memo. 2003-149 ($200), affd. 119 Fed. Appx. 293 (D.C. Cir. 2005). The fact that the Government does not pay the attorneys at that rate--$260,000 per year ($125/hr. x 2,080 hrs.) to $416,000 per year ($200/hr. x 2,080 hrs.)[27]-is not dispositive. See Novelty Textile Mills, Inc. v. Stern, 136 F.R.D. 63, 77 (S.D.N.Y. 1991) (in applying 28 U.S.C.

---

[27]The Federal Government pays its attorneys an annual salary based on 40 hours per week 52 weeks per year. The Government also provides paid holidays and benefits. On the basis of the hourly rates awarded by the Court, if the employee benefits equal 50 percent of the total compensation, salaries for Government trial attorneys would range from $130,000 to $208,000 per year. The salary for a Federal employee at Grade 15 step 5 for 2008 is $130,694, and the maximum pay for members of the Senior Executive Service for 2008 is $172,200.

sec. 1927, whether the client has in fact paid his attorneys at the rate billed is irrelevant to the issue of the amount of the sanction).

We perceive no difference between the situation of public interest attorneys or Government attorneys, whose services are valued at market rates, and the situation of Irvine and Binder, who agreed to represent petitioners at no cost over the amount the Court might allow.  The fact that the taxpayer does not pay the attorney at the market rate (or at any rate) is no more relevant than the fact that the Government and litigants represented by public service agencies do not pay their attorneys at market rates.  The appropriate sanction to impose on the Commissioner depends not on what was actually paid, but on what is a reasonable amount in the circumstances, on the basis of the time reasonably spent and the prevailing rate in the area for attorneys of comparable skill, experience, and reputation. Novelty Textile Mills, Inc. v. Stern, supra at 77.

The phrase "incurred because of such conduct" in section 6673(a)(2) is similar to the phrase "incurred as a result of the removal" in the attorneys' fees sanction of 28 U.S.C. sec. 1447(c) (2006), applicable when a case has been improperly removed from a State court to a Federal District Court.  Title 28 U.S.C. sec. 1447(c) provides that the order of the District Court remanding the case to the State court "may require payment of

just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. sec. 1447(c). The Court of Appeals for the Ninth Circuit has held that the words "any actual expenses, including attorneys' fees, incurred as a result of the removal" does not "remove the discretion of the district court to award fees in certain cases, such as contingent fee or pro bono cases, where the client had not actually 'incurred' the obligation to pay her attorneys' fees". Gotro v. R & B Realty Group, 69 F.3d 1485, 1487 (9th Cir. 1995); see also Huffman v. Saul Holdings Ltd. Pship., 262 F.3d 1128, 1134-1135 (10th Cir. 2001) ("To be compensable, their fees must be actually 'incurred,' that is, they must reflect efforts expended to resist removal."); cf. Wisconsin v. Hotline Indus., Inc., 236 F.3d 363 (7th Cir. 2000) (actual outlays incurred by the State as a result of improper removal is the proper measure of attorneys' fees allowed for improper removal from State court to Federal District Court under 28 U.S.C. sec. 1447(c)).

In computing attorneys' fees sanctions under 28 U.S.C. sec. 1927, the generic sanctioning statute, Federal District Courts apply the lodestar method without regard to the client's obligation to pay the attorney at the billed rate.  See, e.g., Wisconsin v. Hotline Indus., Inc., supra (in applying 28 U.S.C. sec. 1927, whether the client has in fact paid his attorneys at the rate billed is irrelevant to the issue of the amount of the

sanction); see also Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1207 (10th Cir. 2008) ("the choice belongs to the district court, in the exercise of its discretion, which method [actual cost or lodestar amount] to apply in a given case"); Mirch v. Frank, 266 Fed. Appx. 586, 588 (9th Cir. 2008); Bailey v. Papa John's USA, Inc., 236 Fed. Appx. 200, 205 (6th Cir. 2007); LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 906 (D.C. Cir. 1998); United States v. Nesglo, Inc., 744 F.2d 887, 892 (1st Cir. 1984); Thorpe v. Ancell, No. 03-CV-01181 (D. Colo. Aug. 18, 2006); Amedisys, Inc. v. Natl. Century Fin. Enters., Inc., No. 2:04-CV-493 (S.D. Ohio May 2, 2006); Sony Elecs., Inc. v. Soundview Techs., Inc., 389 F. Supp. 2d 443, 447 n.4 (D. Conn. 2005) ("The lodestar method is applicable in assessing awards for attorneys fees under 28 U.S.C. § 1927 as it is when awarding fees under fee-shifting statutes such as 42 U.S.C. § 1988."); Ricks v. Xerox Corp., No. 93-2545 (D. Kan. Sept. 29, 1995).

A court has "discretion to tailor the sanction to the violation." Napier v. Thirty or More Unidentified Fed. Agents Employees or Officers, 855 F.2d at 1092. What constitutes reasonable attorneys' fees "must be considered in tandem with the rule's goals of deterrence, punishment, and compensation." Thomas v. Capital Sec. Servs., Inc., 836 F.2d at 879 (discussing Fed. R. Civ. P. 11). The goals of section 6673(a)(2) are to deter attorneys from unreasonably and vexatiously multiplying

proceedings in this Court, to punish attorneys whose unreasonable and vexatious conduct has multiplied the proceedings, and to compensate the other parties' attorneys for the excess time they were required to expend in responding to the misconduct. Reasonable attorneys' fees are "incurred", and thus compensable, when they reflect attorney's efforts on behalf of their clients to resist the unreasonable and vexatious conduct or to mitigate or overcome its effects. See Huffman v. Saul Holdings Ltd. Pship., supra at 1134-1135.[28] We conclude that the lodestar

---

[28]In Huffman v. Saul Holdings Ltd. Pship., 262 F.3d 1128 (10th Cir. 2001), pursuant to 28 U.S.C. sec. 1447(c), the District Court had awarded attorneys' fees in full, without conducting an independent inquiry into the reasonableness of the fees demanded. The Court of Appeals for the Tenth Circuit reversed, stating:

> Our holding is that the statute's limit on actual fees to those "incurred as a result of removal" requires the district court to conduct some sort of reasonableness inquiry. Our balanced emphasis on the terms "actual" and "incurred" mirrors the common-sense approaches taken in both Hotline and Gotro. We have concluded that the phrase "incurred as a result of removal" informs and narrows the meaning of "actual expenses, including attorney fees." Nothing in either Hotline or Gotro suggests that courts are compelled to award unreasonable, if actual, fees to plaintiffs who successfully obtain an order of remand. To be compensable, their fees must be actually "incurred," that is, they must reflect efforts expended to resist removal. As we said above, and repeat here, unreasonably high fees are not "incurred" as a result of removal; rather, excessive fee requests flow from, and accumulate by means of, improper billing practices, and will not be recoverable under § 1447(c). [Id. at 1135.]

method is the proper starting point for computing reasonable attorneys' fees under section 6673(a)(2).

      7.    <u>Government Incurs the Excess Costs, Expenses, and Attorneys' Fees Attributable to Government Attorneys' Misconduct</u>

The sanctioning statutes look to unreasonable and vexatious multiplications of proceedings, and they impose "an obligation on attorneys <u>throughout the entire litigation</u> to avoid dilatory tactics." <u>United States v. Intl. Bhd. of Teamsters</u>, 948 F.2d 1338, 1345 (2d Cir. 1991) (emphasis added). A Government attorney who unreasonably and vexatiously multiplies Tax Court proceedings brings down upon the United States, subjects the United States to, and makes the United States vulnerable to liability for the costs, expenses, and fees attributable to the services of the taxpayer's attorney's professional services that are required as an appropriate response to the misconduct. The United States incurs the attorneys' fees by operation of law under section 6673(a)(2), just as a taxpayer incurs a penalty for his own misconduct under section 6673(a)(1).

Payment for the professional services of the taxpayer's attorney required to respond to the misconduct is "the cost of doing business"--the cost of unreasonably and vexatiously doing business. In Dixon IV we observed that "The resulting inquiry has not had so much to do with the merits of petitioners' cases as it has been a cost of Government operations incurred for the

purpose of determining the extent of the misconduct of the Government's lawyers."  In the Dixon V remand proceedings the attorneys' fees and expenses stemmed from the attorneys' time spent investigating the facts relevant to the Thompson settlement and presenting the matter to the Court at the multiple sessions of the evidentiary hearing.  The fees and expenses were caused by the Government attorneys' misconduct during the test-case proceedings and are costs of Government operations.  Imposing those fees and expense on respondent helps to protect the Court and the public from multiplied litigation that impedes the administration of justice.

Under section 6673(a)(2) the Government incurs the attorneys' fees and expenses for the efforts expended by the taxpayer's attorneys because of the Government attorney's unreasonable and vexatious misconduct.  See Huffman v. Saul Holdings Ltd. Pship., 262 F.3d at 1135 (discussing fees awarded under 28 U.S.C. sec. 1447(c)).  This interpretation is consistent with the purpose of section 6673(a)(2)--"'to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'"  Riddle & Associates, P.C. v. Kelly, 414 F.3d at 835 (quoting Kapco Manufacturing Co. v. C & O Enters., Inc.  886 F.2d at 1491) (discussing 28 U.S.C. sec. 1927).  Any other approach would call

for a fictional formal agreement between the taxpayer and the attorney.

8. <u>Section 7430 and the Equal Access to Justice Act</u>

Respondent argues that for purposes of section 6673(a)(2) the Court should give the same meaning to the word "incurred" as the Court has given to it for purposes of section 7430. Section 7430 authorizes the Court to award the prevailing party reasonable litigation costs incurred in connection with the proceedings, including "reasonable fees paid or incurred for the services of attorneys".[29] Sec. 7430(c)(1)(B)(iii). The Tax Court has held that litigation costs are not incurred for purposes of section 7430 unless the prevailing taxpayer has a legal obligation to pay them. <u>Swanson v. Commissioner</u>, 106 T.C. 76 (1996); see also <u>Grigoraci v. Commissioner</u>, 122 T.C. at 277-278; <u>Frisch v. Commissioner</u>, 87 T.C. at 846.

Section 7430 closely resembles 28 U.S.C. sec. 2412(d)(1)(A),[30] enacted under the Equal Access to Justice Act

---

[29]If an attorney is representing the prevailing party for no fee or a nominal fee, sec. 7430(c)(3)(B), titled "Pro bono services", now permits the Court to award fees in excess of the attorneys' fees paid or incurred, provided the award is paid to the attorney or the attorney's employer. At pt. II.F. <u>infra</u>, we rebut any negative implications that might conceivably arise from the lack of a similar express provision for pro bono services in sec. 6673(a)(2)(B).

[30]Tit. 28 U.S.C. sec. 2412(d)(1)(A) (2006) provides:

Except as otherwise specifically provided by statute, a
(continued...)

(EAJA), title II of the Act of October 21, 1980, Pub. L. 96-481, secs. 201-208, 94 Stat. 2325 (effective Octber 1, 1981). EAJA requires other Federal courts to award attorneys' fees to prevailing parties in actions brought in those courts against the United States unless the position of the Government was substantially justified or special circumstances make an award unjust.

Congress enacted section 7430 "'to deter abusive actions or overreaching by the [IRS] and to enable taxpayers to vindicate their rights regardless of their economic circumstances.'" Cooper v. United States, 60 F.3d 1529, 1530 (11th Cir. 1995) (quoting Weiss v. Commissioner, 88 T.C. 1036, 1041 (1987)); Huffman v. Commissioner, 978 F.2d 1139, 1146 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; Zinniel v. Commissioner, 883 F.2d 1350, 1360 (7th Cir. 1989) (Will, J., dissenting), affg. 89 T.C. 357 (1987); In re Testimony of Arthur Andersen & Co., 832 F.2d 1057, 1060 (8th Cir. 1987); Weiss v. Commissioner, supra at 1041 (citing H. Rept. 97-404, at 11

[30](...continued)
court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(1981)).  Attorneys' fees awarded under section 7430 are intended to be compensatory rather than punitive.  See Estate of Cervin v. Commissioner, 200 F.3d 351, 357-358 (5th Cir. 2000), affg. T.C. Memo. 1998-176.

By contrast, the primary purpose of the sanctioning statutes is "deterrence and punishment rather than restitution."  Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d at 647.  But see Thomas v. Capital Sec. Serv., Inc., 836 F.2d at 879 ("What constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 [Fed. R. Civ. P.] must be considered in tandem with the rule's goals of deterrence, punishment, and compensation.").  The sanctioning statutes are penal and serve a primary purpose different from that of the prevailing party statutes, which are remedial.  The imposition of sanctions under section 6673(a)(2) and 28 U.S.C. sec. 1927 "depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation."  Chambers v. NASCO, Inc., 501 U.S. at 53 (discussing sanctions under the bad-faith exception to the American rule).

Section 7430 is a fee-shifting provision under which attorneys' fees are awarded to the prevailing party other than the United States and requires that the fees be paid to the prevailing party.  Section 7430 and the EAJA require the fees to have been incurred by the prevailing party, which prevents a

windfall to the prevailing party while furthering the purpose of the statute.

By contrast, the sanctioning statutes neither award the fees to any party nor require the fees be paid to any party, thereby permitting the court to direct payment directly to the attorney. The sanctioning statutes do not distinguish between winners and losers or between the Government and the opposing party or the taxpayer and the Commissioner. See Roadway Express, Inc. v. Piper, 447 U.S. at 762 (discussing 28 U.S.C. sec. 1927). Neither section 6673(a)(2) nor 28 U.S.C. sec. 1927 requires that the fees have been incurred by the other party. The sanctioning statutes merely require that the excess fees be incurred because of the misconduct of the opponent's attorney. In this regard, the sanctioning statutes are more broadly drawn than section 7430.

Although courts construe a statutory term in accordance with its ordinary or natural meaning in the absence of a statutory definition, a single word "may or may not extend to the outer limits of its definitional possibilities" and must not be read in isolation. Dolan v. USPS, 546 U.S. at 486. The Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, for 'literalness may strangle meaning.'" Lynch v. Overholser, 369 U.S. 705, 710 (1962) (citations omitted); see also Ed. A. Wilson, Inc. v. GSA, 126 F.3d 1406, 1409 (Fed. Cir.

1997) ("legislative history of the Act warns against an 'overly technical construction * * * resulting in the unwarranted denial of fees'" (quoting Brewer v. Am. Battle Monuments Commn., 814 F.2d 1564, 1566-1567 (Fed. Cir. 1987))). For purposes of section 6673(a)(2) the more appropriate meaning of the word "incur" encompasses the broader definition "to make oneself subject to" or "vulnerable to" and "to have the liability cast upon one by operation of law".

Reading the statute and considering the purpose and context of section 6673(a)(2) as a whole, we believe the word "incurred" extends nearer "to the outer limits of its definitional possibilities", Dolan v. USPS, supra at 486, than does its restricted meaning in section 7430. The purpose of section 6673(a)(2) is punitive, and in context its reach is broader than that of section 7430. Therefore, we do not restrict the meaning of the word "incurred" in section 6673(a)(2) as the Court did in Swanson v. Commissioner, 106 T.C. at 101-102, in holding for purposes of section 7430 that attorneys' fees are incurred only if the represented taxpayer has a legal obligation to pay them.

### 9. Law of the Case Doctrine

Respondent contends that the doctrine of law of the case prevents us from requiring respondent to pay the excess costs, expenses, and attorneys' fees requested on behalf of Porter & Hedges if petitioners are not liable to pay them. We disagree.

"As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).  However, the doctrine "'merely expresses the practice of courts generally to refuse to reopen what has been decided'".  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)).

The law of the case doctrine applies only to issues that have been previously decided either explicitly or by necessary implication by the same court or a higher court in the identical case and does not preclude consideration of issues not previously presented or decided.  Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993); Conway v. Chem. Leaman Tank Lines, Inc., 644 F.2d 1059, 1062 (5th Cir. 1981).  It does not apply to meritorious issues never previously submitted to or passed upon by the court. Laitram Corp. v. NEC Corp., 115 F.3d 947, 952 (Fed. Cir. 1997); Conway v. Chem. Leaman Tank Lines, Inc., supra at 1062.

The doctrine is subject to three exceptions:  If the decision is clearly erroneous and enforcement would cause manifest injustice; if intervening controlling authority makes reconsideration appropriate; or if substantially different evidence has been introduced.  Minidoka Irrigation Dist. v. Dept. of Interior, 406 F.3d 567, 573 (9th Cir. 2005).

In Dixon IV, pursuant to section 6673(a)(2) we required respondent to pay attorneys' fees petitioners had paid for their attorneys' services from June 10, 1992 (the date the Court filed respondent's motions to vacate the decisions in the Thompson and Cravens cases), through March 30, 1999 (the date the Court issued its opinion in Dixon III following the DuFresne remand proceedings) (the Dixon III and IV multiplied proceedings). Respondent contends that because we limited the awards in Dixon IV to amounts petitioners paid or incurred in the Dixon III and IV multiplied proceedings, the law of the case doctrine requires us to limit the awards in these cases to the expenses and attorneys' fees petitioners paid or incurred in the Dixon V remand proceedings. We disagree.

In Dixon IV the issue was whether petitioners' requested attorneys' fees should be awarded under section 7430 or section 6673(a)(2). We held that section 7430 did not apply because petitioners were not prevailing parties on the underlying merits of the deficiency determinations. In Dixon IV we held that the conduct of the Government attorneys in the test-case proceedings was unreasonable and vexatious; that misconduct had multiplied and protracted the proceedings in these cases unreasonably and vexatiously. That holding is the law of the case.

We required respondent to pay the excess costs, expenses, and attorneys' fees incurred because of his attorneys'

misconduct--costs, expenses, and attorneys' fees incurred in the Dixon III and IV multiplied proceedings. Citing Harper v. Commissioner, 99 T.C. at 549, 551, we stated in Dixon IV that "attorneys' fees awarded under section 6673(a)(2) are computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate" (the lodestar method) and "that a reasonable hourly rate is the hourly fee that attorneys of similar skill in the area would typically be entitled to for the type of work in question." In Dixon IV, however, although we had issued orders directing the attorneys to comply with Rule 231(d), we were presented with "less than an ideal record". Izen, Jones, and Sticht failed to provide the Court with sufficient information to determine the number of excess hours that they had reasonably expended during the Dixon III and IV multiplied proceedings, and Jones and Sticht had neither addressed the reasonableness of their hourly rates nor furnished detailed billing statements. Consequently we could not apply the lodestar method in computing the section 6673(a)(2) sanction.

We went on to recognize that petitioners and the other Kersting project taxpayers participating in the Dixon III and IV multiplied proceedings had incurred substantial attorneys' fees and costs that warranted imposition of the attorneys' fees sanction. We believed that petitioners and the other Kersting project taxpayers should not be overly penalized for their

counsel's poor documentation efforts and required respondent to pay an approximation of the amount of the excess attorneys' fees and costs. We imposed substantial percentage reductions in our fee awards that were attributable to the attorney's various failures to substantiate their claims in their entirety. In so doing, we further reduced the awards to Izen's clients, making it clear that under no circumstances would we require respondent to pay attorneys' fees and costs for services to Kersting that appeared to have been rendered by various attorneys.

Respondent argues that our statement in Dixon IV that "our decision to award attorneys' fees and costs in Dixon IV is intended to compensate petitioners for the additional fees and costs that they incurred as a direct consequence of that [the Government attorneys'] misconduct" is the law of the case. To the contrary, that statement was made in response to respondent's contention that an award of attorneys' fees and costs was not justified because petitioners had already been compensated by the sanctions imposed upon respondent in Dixon III. We rejected that argument because the sanctions that we imposed in Dixon III compensated petitioners for different costs resulting from the misconduct of the Government attorneys--the time-sensitive additions to tax and increased interest items of liability that were indirectly compounded by the delay in the resolution of the cases.

The meaning of the word "incurred" was not at issue in Dixon IV. In Dixon IV we did not examine or discuss whether petitioners or the other Kersting project taxpayers had or were required to have a contractual obligation to pay the requested fees. Moreover, we issued our opinion in Dixon IV after having held in Dixon III that the misconduct of the Government attorneys did not result in a structural defect but rather resulted in harmless error and before the Court of Appeals for the Ninth Circuit held in Dixon V that the misconduct of the Government attorneys in Dixon II was a fraud on the Court.

The intervening holding of Dixon V would make reconsideration appropriate. Moreover, denying Porter & Hedges attorneys' fees for the services provided by Irvine and Binder in the Dixon V remand proceedings would cause manifest injustice. See Castro v. United States, 540 U.S. 375, 384 (2003); Arizona v. California, 460 U.S. at 619 n.8. In addition, substantially different evidence, an accurate description of the hours expended by Binder and Irvine and reasonable rates of compensation, has been introduced, and respondent has agreed that it is accurate and reasonable. The doctrine of law of the case does not limit our power to require respondent to pay the expenses and attorneys' fees requested on behalf of Porter & Hedges, which resulted from the misconduct of the Government attorneys.

In Dixon IV we held, pursuant to section 6673(a)(2)(B), that respondent was required to pay the excess costs, expenses, and attorneys' fees incurred in the DuFresne remand proceedings because the proceedings resulted from the Government attorneys' misconduct during the test case proceedings.  Respondent's liability for excess attorneys' fees and expenses related to any further proceedings resulting from the Government attorneys' misconduct, including the Dixon V remand proceedings, is implicit in the Dixon IV holding.  Early in the proceedings respondent agreed that reasonable attorneys' fees related to the Dixon V remand proceedings "should be awarded to the petitioners" pursuant to section 6673(a)(2).  Respondent has incurred those fees as a result of the Government attorneys' misconduct in the test-case proceedings and the Court's holding in Dixon IV.

F.    Fees "Incurred" in Pro Bono Representation and
      Contingent Fee Arrangements

For purposes of completeness, we will now put to rest any concern that a negative implication arises from the lack of an express provision in section 6673(a)(2)(B) for payment of fees for pro bono services, similar to the provision in section 7430(c)(3)(B).  We therefore address caselaw under prevailing party statutes generally and the genesis of the specific provision added to section 7430 in 1998.

## 1.   Caselaw Under Prevailing Party Statutes

Section 7430 and 28 U.S.C. sec. 2412 are two of more than 100 prevailing party statutes that oblige the losing party to reimburse the winner for his attorneys' fees.[31]   Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 562 (1986).   "[A]lthough these [prevailing party] provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable.'"   Id.

> [T]he aim of such statutes was to enable private
> parties to obtain legal help in seeking redress for
> injuries resulting from the actual or threatened
> violation of specific federal laws.  Hence, if
> plaintiffs * * * find it possible to engage a lawyer
> based on the statutory assurance that he will be paid a
> "reasonable fee," the purpose behind the fee-shifting
> statute has been satisfied.  [Id. at 565.]

Courts have awarded attorneys' fees under prevailing party statutes, including the more narrowly drawn statutes requiring that fees be "incurred", when the prevailing party is represented by a legal services organization, labor union, or counsel appearing pro bono.[32]   See New York Gaslight Club, Inc. v. Carey,

---

[31]See Marek v. Chesny, 473 U.S. 1, 44-51 (1985) (Brennan, J., dissenting), for an extensive list of separate statutes providing for the award of attorneys' fees.

[32]The legislative history of the EAJA, H. Rept. 1418, 10-11, 15 (1980), supports the conclusion that pro bono awards were contemplated from its inception:

(continued...)

447 U.S. 54, 70 n.9 (1980) (pro bono awards available under 42 U.S.C. sec. 2000e-5(k)); Ed. A. Wilson, Inc. v. GSA, 126 F.3d at 1409 (EAJA); Yankton Schl. Dist. v. Schramm, 93 F.3d 1369, 1377 (8th Cir. 1996) (pro bono award under the Handicapped Children's Protection Act, 20 U.S.C. sec. 1415(e)(4)(B)); AARP v. EEOC, 873 F.2d 402, 406 (D.C. Cir. 1989) ("[U]nder the EAJA, [the prevailing party] should be able to recover 'reasonable fees and expenses' of attorneys for their independently retained pro bono counsel despite the fact that, if we denied fees, they [the prevailing party] would not pay any fees to counsel."); Eggers v. Bullitt County School Dist., 854 F.2d 892, 899 (6th Cir. 1988); Watford v. Heckler, 765 F.2d 1562, 1567 n.6 (11th Cir. 1985) ("[I]t is well-settled that, in light of the act's legislative history and for reasons of public policy, plaintiffs who are represented without charge are not generally precluded from an award of attorneys' fees under the EAJA."); DeBold v. Stimson, 735 F.2d 1037, 1043 (7th Cir. 1984); Cornella v. Schweiker, 728

---

[32](...continued)

In general, consistent with the above limitations [statutory caps], the computation of attorney fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short, the award of fees is to be determined according to general professional standards. [Emphasis added.]

F.2d 978, 986 (8th Cir. 1984) (legislative history of EAJA support conclusion that pro bono awards were contemplated); McLean v. Arkansas Bd. of Educ., 723 F.2d 45, 47 (8th Cir. 1983); Falcone v. IRS, 714 F.2d 646, 647 n.3 (6th Cir. 1983); Clarkson v. IRS, 678 F.2d 1368, 1371 n.3 (11th Cir. 1982); Cunningham v. FBI, 664 F.2d 383, 385 n.1 (3d Cir. 1981); Crooker v. U.S. Dept. of Treasury, 634 F.2d 48, 49 n.1 (2d Cir. 1980) (pro bono awards available under Freedom of Information Act); Oldham v. Ehrlich, 617 F.2d 163, 168 (8th Cir. 1980) (pro bono awards available under 42 U.S.C. sec. 1988); Rodriguez v. Taylor, 569 F.2d 1231, 1244-1246 (3d Cir. 1977) (pro bono awards available under Age Discrimination in Employment Act).

In Gaskins v. Commissioner, T.C. Memo. 1996-268, the taxpayers sought attorneys' fees for counsel who had agreed to provide representation pro bono. The Court noted that whether attorneys' fees could be awarded under section 7430 for pro bono representation was an issue of first impression in the Tax Court and expressed the view that pro se taxpayers could not recover attorneys' fees because they had not incurred them. However, the Court had no occasion to decide the case on that ground because the taxpayers and their counsel had unreasonably protracted the proceeding and the Commissioner's position was substantially justified at all times throughout the proceeding.

In Thompson v. Commissioner, T.C. Memo. 1996-468, the Court noted, in the light of the legislative history of the EAJA and for reasons of public policy, that representation by a legal services organization or by an attorney pro bono does not preclude an award of fees and costs under the EAJA. Id. n.9 (citing Phillips v. GSA, 924 F.2d 1577, 1582-1583 (Fed. Cir. 1991). The Court went on to observe that awards are routinely made in those circumstances even though the claiming party did not pay or incur fees. Id. (citing SEC v. Comserv Corp., 908 F.2d 1407, 1415 (8th Cir. 1990), AARP v. EEOC, supra at 406, and Watford v. Heckler, supra at 1567 n.6).

Courts have held that allowing fee awards for pro bono representation furthers the purpose of all attorneys' fees statutes by ensuring that legal services groups and other pro bono counsel have a strong incentive to represent indigent claimants. See, e.g., Cornella v. Schweiker, supra at 986 (quoting Ceglia v. Schweiker, 566 F. Supp. 118, 123 (E.D.N.Y. 1983)). Not allowing attorneys' fees for pro bono representation in litigation against the Government "would more than likely discourage involvement by these organizations in such cases, effectively reducing access to the judiciary for indigent individuals". Id. at 986-987. The Court of Appeals for the District of Columbia Circuit has observed that if a party must make himself liable to pay for the services of an attorney in an

action that awards attorneys' fees, awards could be made only when the party could afford to pay for legal representation. AFGE, AFL-CIO, Local 3882 v. FLRA, 944 F.2d 922, 933 (D.C. Cir 1991) (addressing awards to employees under the Back Pay Act).

Some courts have finessed the question of whether there is an exception for pro bono representation by looking at the arrangement between the attorney and his client as a contingent-fee agreement. Some have held that fees are incurred by a litigant represented by counsel working pro bono when, although the litigant is not personally liable for the fees, he is subject to an obligation to turn over any fees awarded. Phillips v. GSA, supra at 1582-1583 & n.4; accord Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 933 n.4 (Fed. Cir. 2000) (en banc); Preseault v. United States, 52 Fed. Cl. 667, 674 (2002) (a plaintiff who has obtained representation on the condition that he seek fees for his attorneys has incurred an obligation that can be reimbursed by a fee-shifting statute). "When an agreement exists to support the conditional obligation, a plaintiff is not viewed as simply having been given legal aid; instead, this condition is the cost to the plaintiff of obtaining those services." Preseault v. United States, supra at 673. At least one court has held that an implied agreement that the fee will be paid over to "can be said to exist as a matter of law." Wasniewski v. Grzelak-Johannsen, 549 F. Supp. 2d 965, 971 (N.D. Ohio 2008). Other courts have

held that when a pro bono attorney "forgives" a fee to a client unable to afford legal expenses, the client is eligible for an award on the basis of that arrangement with the attorney. See, e.g., AARP v. EEOC, 873 F.2d at 406; Watford v. Heckler, 765 F.2d at 1567 n.6.

Courts have not summarily denied an award for fees that are subject to a contingency. Rather, the courts consider whether the contingency has been satisfied in discerning whether, and in what amount, attorneys' fees have been incurred.

In United States v. 122.00 Acres of Land, 856 F.2d 56, 58 (8th Cir. 1988), the Court of Appeals for the Eighth Circuit denied an award of attorneys' fees under 42 U.S.C. sec. 4654(a) to a condemnee who had entered into a contingent fee contract with his attorney under which the condemnee would bear no expense for attorneys' fees if there were no recovery. Because the Government abandoned its condemnation action, the condemnee did not receive payment for his land. Consequently, under his agreement with his attorney, the attorney was not entitled to a fee. The Court of Appeals held that the condemnee party "actually incurred" only the amount owed under a contingency fee agreement. The failure to fulfill the contingency was fatal, and the condemnee was not entitled to an award of attorneys' fees under 42 U.S.C. sec. 4654(a).

In <u>Marre v. United States</u>, 38 F.3d 823, 828-829 (5th Cir. 1994), the District Court had awarded a taxpayer who succeeded in his suit for wrongful disclosure of tax return information attorneys' fees in an amount greater than those required under his contingent fee agreement with his attorneys. The Court of Appeals for the Fifth Circuit reversed, holding that the taxpayer could not recover attorneys' fees in an amount greater than those required under his contingent fee agreement with his attorneys, because the applicable attorneys' fees statute, section 7430, limits attorneys' fees to those actually incurred. By contrast, in <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 93-94 (1989), the Supreme Court held that 42 U.S.C. sec. 1988, which allows courts to award prevailing parties reasonable attorneys' fees as part of the costs without any requirement that those fees be incurred, "contemplates reasonable compensation * * * for the time and effort expended by the attorney", and that "a contingent-fee contract does not impose an automatic ceiling on an award of attorneys' fees."

Some cases discuss contingent obligations to pay fees where the fees are paid by a third party. A litigant does not incur payments made by third parties if the litigant has no obligation to repay the third party. See, e.g., <u>United States v. Paisley</u>, 957 F.2d 1161, 1164 (4th Cir. 1992) (litigant who was entitled to full indemnification of attorneys' fees by her employer did not

"incur" any expenses under EAJA); <u>Kruse v. Commissioner</u>, T.C. Memo. 1999-157 (taxpayer wife was not entitled to an award for fees and costs paid by taxpayer husband's employee benefit plan); <u>Republic Plaza Props. Pship. v. Commissioner</u>, T.C. Memo. 1997-239 (no award for fees paid by parent company of corporate tax matters partners); <u>Thompson v. Commissioner</u>, T.C. Memo. 1996-468 (taxpayer wife cannot be awarded litigation costs that were paid by taxpayer husband, who did not meet the net worth requirement). Some of these decisions reflect taxpayers' attempts to avoid net worth limitations under prevailing party statutes. E.g., <u>Thompson v. Commissioner</u>, <u>supra</u>.

Courts have specifically held that a contingent fee agreement that requires any awarded fees to be paid to the attorney satisfies the requirement that fees or expenses be "incurred" within the meaning of fee-shifting statutes. See, e.g., <u>Phillips v. GSA</u>, 924 F.2d 1577 (Fed. Cir. 1991); <u>Young v. Commissioner</u>, T.C. Memo. 2006-189.

In <u>Phillips v. GSA</u>, <u>supra</u>, the Court of Appeals for the Federal Circuit held that a fee agreement that requires any awarded fees to be paid to the attorney meant such fees were incurred, even if the client would not be liable for fees if there should be no such award. The Court of Appeals construed the fee arrangement between the litigant and her attorney to mean that if an award of attorneys' fees was obtained on her behalf,

she was obligated to turn it over to her attorney.  The court held that the litigant incurs the attorneys' fees that may be awarded her.  On the other hand, if no fee is awarded, the litigant would not have any obligation to pay any further fees to her attorney from her own resources.  Id. at 1582-1583.  Other courts have followed the reasoning in Phillips in allowing fees subject to a contingency.  See, e.g., Preseault v. United States, 52 Fed. Cl. at 673; Seay v. United States, 369 Bankr. 423, 429-431 (Bankr. E.D. Ark. 2007).

In Young v. Commissioner, supra, we awarded appellate fees and expenses under section 7430 to Kersting project taxpayers represented in the Dixon V appeal by Izen and Jones.  We found that Izen's flat-fee appellate contracts encompassed an implied agreement that any fee award would be paid over to Izen to the extent the client's share of the award exceeded the amount the client had paid pursuant to the contract.  In accord with Phillips v. GSA, supra, we held that the contracts supplied additional payment obligations that supported an award of the potentially recoverable amount in its entirety.

We believe that petitioners' arrangement supports the same result in this case.  Petitioners and their counsel believed that the Court would require respondent to pay petitioners' reasonable attorneys' fees and expenses incurred in the remand proceedings, and respondent's counsel had agreed that respondent would be

obligated to pay petitioners' reasonable attorneys' fees and expenses incurred in the remand proceedings. Binder and Irvine agreed, therefore, that Porter & Hedges would not require petitioners to pay any fees or expenses beyond those awarded by the Court. Pursuant to that oral agreement, Irvine and Binder entered their appearances in these cases.

Under written engagement letters Irvine and Binder agreed to represent petitioners in the Dixon V remand proceedings without compensation from them but explained that Porter & Hedges would "request payment of fees and expenses from the government, as provided by law or by determination of a court, for our representation". Petitioners agreed to provide necessary facts, affidavits, testimony, and other assistance to support the requests.

The engagement letters are consistent with the parties' and the Court's interpretation of section 6673(a)(2)--that it does not require petitioners to be contractually obligated to pay the fees. The oral agreements reflect and clarify that petitioners agreed to pay and are liable to pay Porter & Hedges any fees awarded to them by the Court. We construe petitioners' fee arrangement with Porter & Hedges to encompass the parties' oral agreement that petitioners would not be liable to pay Porter & Hedges any fees in excess of those awarded to them by the Court.

A court's decision to grant or deny attorneys' fees is reviewed for abuse of discretion.  See, e.g., Liti v. Commissioner, 289 F.3d 1103, 1104 (9th Cir. 2002) (citing Huffman v. Commissioner, 978 F.2d at 1148).  A court's discretion to award attorneys' fees "is not without limit: the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  Blanchard v. Bergeron, 489 U.S. at 89 (quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968), and Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)).  Once a litigant has satisfied the statutory requirements entitling the litigant to attorneys' fees, it would be an abuse of discretion for a court to deny an award of the fees.  When an attorney agrees to accept the fees awarded by the court as full compensation for representing a litigant, the condition is satisfied and the litigant incurs the fees when the statutory requirements are met.

The Dixon V remand proceedings were caused by Government attorneys' misconduct that was so unreasonable and vexatious that it sank to the level of fraud on the Court.  In Dixon IV we decided that requiring respondent to pay attorneys' fees under section 6673(a)(2) was an appropriate sanction for that misconduct.  Petitioners' obligation to pay any fees awarded under section 6673(a)(2) was not contingent on a subsequent

event.  The requirements for awarding fees under section

6673(a)(2) have been satisfied.

> 2.   Section 7430(c)(3)(B)

Section 7430(c)(3)(B), enacted by the Internal Revenue

Service Restructuring and Reform Act of 1998, Pub. L. 105-206,

sec. 3101(c), 112 Stat. 728, specifically provides for awards of

attorneys' fees for pro bono services as follows:

> (B) Pro bono services.  The court may award
> reasonable attorneys' fees under subsection (a) in
> excess of the attorneys' fees paid or incurred if such
> fees are less than the reasonable attorneys' fees
> because an individual is representing the prevailing
> party for no fee or for a fee which (taking into
> account all the facts and circumstances) is no more
> than a nominal fee.  This subparagraph shall apply only
> if such award is paid to such individual or such
> individual's employer.

The legislative history of section 7430(c)(3)(B) explains the

reason for the change as follows:[33]

> The Committee believes that the pro bono publicum
> representation of taxpayers should be encouraged and
> the value of the legal services rendered in these
> situations should be recognized.  Where the IRS takes
> positions that are not substantially justified, it
> should not be relieved of its obligation to bear
> reasonable administrative and litigation costs because
> representation was provided the taxpayer on a pro bono

---

[33]The statement of the then Executive Director of the
Community Tax Law Project, Richmond, Va., Nina Olson (now the
National Taxpayer Advocate), before the House Ways and Means
Committee Sept. 26, 1997, suggests that the provision was enacted
in response to Gaskins v. Commissioner, T.C. Memo. 1996-268, as
an anticipatory measure to ensure that the Tax Court would not
deny attorneys' fees under sec. 7430 for pro bono representation.
See Hearings on H.R. 2292 Before the House Ways and Means Comm.,
105th Cong., 1st Sess. 145-154 (1997).

basis.  [S. Rept. 105-174, at 47-48 (1998), 1998-3 C.B.
537, 583-584.]

There was no need to amend section 6673(a)(2) because this
Court had consistently held in cases where the Court had imposed
sanctions against counsel for a taxpayer that attorneys' fees
awarded under section 6673(a)(2) are to be computed by
multiplying the number of excess hours reasonably expended on the
litigation by a reasonable hourly rate and that a reasonable
hourly rate is the hourly fee that attorneys of similar skill in
the area would typically be entitled to for the type of work in
question.  Harper v. Commissioner, 99 T.C. 533 (1992); Matthews
v. Commissioner, T.C. Memo. 1995-577; Murphy v. Commissioner,
T.C. Memo. 1995-76.  The fees were never computed on the amount
the Commissioner paid for the attorneys' services; they were
computed under the lodestar method without any inquiry into the
Commissioner's obligation or liability to pay the Government
attorneys those amounts.

When imposing the section 6673(a)(2) sanction on the
Commissioner, the Court may compute the lodestar amount without
regard to the taxpayer's obligation to pay the attorney.  Where
Government attorneys unreasonably and vexatiously multiply the
proceedings in this Court, the Commissioner should not be
relieved of his liability to pay the excess costs, expenses, and
attorneys' fees because representation was provided the taxpayer
pro bono.

### G. Respondent Must Pay Attorneys' Fees and Excess Expenses Requested on Behalf of Petitioners' Attorneys

The Court may require respondent to pay the excess costs, expenses, and attorneys' fees incurred because of the unreasonable and vexatious conduct of respondent's counsel. When attorneys' fees, expenses, and costs relate to the time for attorney services caused by the unreasonable and vexatious conduct of the Commissioner's attorneys, the Court should ordinarily require the Commissioner to pay those excess fees, expenses, and costs, "unless special circumstances would render such an award unjust." Blanchard v. Bergeron, supra at 89. It would be an abuse of discretion not to do so. Once the unreasonable and vexatious conduct occurs, the excess fees, expenses, and costs are incurred as the services are performed and the expenses and costs accrue.

The requested attorneys' fees and expenses were incurred for purposes of section 6673(a)(2) because (1) respondent incurred them either once respondent's attorneys commenced their unreasonable and vexatious conduct or once we held in Dixon IV that their conduct was unreasonable and vexatious, (2) petitioners were contingently liable for the fees, and (3) the contingency has been satisfied. The Court may require respondent to pay the excess attorneys' fees and expenses requested on behalf of Porter & Hedges.

III. <u>Inherent Power To Impose Sanctions</u>

During the Dixon V remand proceedings we stated that section 6673(a)(2) was the applicable statutory provision regarding legal fees for attorneys' services performed in the remand proceedings. That statement reflected our understanding that section 7430 did not apply--the reasonableness of respondent's position in the remand proceedings, the statutory cap on the attorneys' hourly rates, and the Dixon V taxpayers' net worths would not be at issue. Our reference to the appropriate statutory provision did not foreclose recourse to our inherent power.

This Court has inherent power to regulate and supervise its proceedings to ensure the integrity of its process. <u>Williams v. Commissioner</u>, 119 T.C. 276, 282 (2002) (citing <u>Freytag v. Commissioner</u>, 501 U.S. 868, 891 (1991), and <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43-46 (1991)). A primary aspect of the Court's discretion to invoke its inherent power is the ability to fashion an appropriate sanction for conduct that abuses the judicial process. <u>Chambers v. NASCO, Inc.</u>, <u>supra</u> at 44-45. "In this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorneys' fees against the responsible party". <u>Id.</u> at 46 (quoting <u>Universal Oil Prods. Co. v. Root Refining Co.</u>, 328 U.S. 575, 580 (1946)).

The Tax Court may, in its informed discretion, rely on inherent power rather than section 6673(a)(2).  See Chambers v. NASCO, Inc., supra at 50; Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001).  We may rely on our inherent power to impose a sanction where other sources of the power to sanction are not "up to the task" to do so.  Chambers v. NASCO, Inc., supra at 50; see also Toon v. Wackenhut Corr. Corp., 250 F.3d 950, 952 (5th Cir. 2001) ("When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent powers to impose sanctions." (citation and quotation marks omitted)).

The Court can invoke its inherent power to sanction conduct that defiles the Court even if existing statutes or procedural rules sanction the same conduct.  Chambers v. NASCO, Inc., supra at 49.

> [The inherent] power is both broader and narrower than other means of imposing sanctions.  First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses.  At the very least, the inherent power must continue to exist to fill in the interstices. * * * [Id. at 46.]

Respondent asserts:  "Throughout the course of the protracted proceedings following the Dixon III opinion, the Court has consistently and expressly eschewed 'inherent power' as a basis for awarding attorneys' fees.  There is no reason for the court to now decide to take a different approach."  We disagree.

In Dixon IV, decided before the Court of Appeals held in Dixon V that the Government attorneys had committed a fraud on this Court, we considered whether attorneys' fees should be awarded to petitioners under section 7430 or section 6673(a)(2). We held that section 7430 did not apply because petitioners were not prevailing parties in the underlying merits of the deficiency determinations. We held that the Government attorneys' conduct had multiplied the proceedings unreasonably and vexatiously and imposed the sanction under section 6673(a)(2). We believed that sanction to be sufficient and denied motions for additional sanctions filed by Izen, Jones, and Sticht. However, we did invoke our inherent power in Dixon IV and required respondent to pay interest on the award from the date of the decisions at the applicable rates for underpayments under sections 6601(a) and 6621(a)(2).

During the test-case proceedings the Government attorneys committed a fraud on the Court that undermined the integrity of the Court's proceedings and the confidence of all future litigants and violated the rights of petitioners, other test-case petitioners, and non-test-case taxpayers in more than 1,300 cases bound by the outcome of the test cases. Dixon V, 316 F.3d at 1047. We properly invoke our inherent power to impose sanctions on respondent for the fraud committed on the Court by the Government attorneys.

IV. <u>Conclusion</u>

We hold, pursuant to section 6673(a)(2) and the inherent power of the Court, that we may and will require respondent to pay to Porter & Hedges $1,101,575.34 for reasonable attorneys' fees and expenses attributable to services provided to petitioners by Binder and Irvine during the Dixon V remand proceedings. Further, because respondent incurred the fees and expenses pursuant to section 6673(a)(2) and Dixon IV, we will invoke our inherent power to require respondent to pay additional amounts equal to interest to Porter & Hedges at the applicable rates for underpayments under sections 6601(a) and 6621(a)(2) on $1,037,542.58 from June 29, 2007, the date Irvine filed the motion for attorneys' fees, and on $64,745.26 from November 19, 2007, the date respondent and Irvine filed the supplemental stipulation of facts regarding fees and expenses incurred in preparing the subject motion. In so doing, we give effect to the spirit of the direction of the Court of Appeals in Dixon V to fashion judgments that would put taxpayers in the same position as provided in the Thompson settlement; in augmenting the award

of fees and expenses with interest equivalents, we do no more than mimic DeCastro's fee arrangement with the Thompsons.[34]

An appropriate order will be entered.

_____

[34]See supra note 11.